595 So.2d 710 (1992)
Michael CLARK, et ux.,
v.
Dr. Nicholas A. RANSOM and La. Patient's Compensation Fund and Oversight Board.
No. 91-C-632.
Court of Appeal of Louisiana, Fifth Circuit.
February 18, 1992.
Writ Denied May 1, 1992.
*711 Vicki Picou, Charles A. Boggs, New Orleans, for relators.
Elliott Baker, William W. Shaw, Jr., Steven M. Pizzo, Metairie, for respondents.
Before WICKER, GOTHARD and CANNELLA, JJ.
WICKER, Judge.

ON REMAND
This application for supervisory and/or remedial writs comes before us on a remand from the Louisiana Supreme Court for "briefing, argument and opinion." Michael Clark, et ux v. Dr. Nicholas A. Ransom, 590 So.2d 72 (La.1991). The matter was set for oral argument February 5, 1992 and submitted on that date. The writ application is taken from a judgment denying Dr. Ransom's exception of prematurity. The trial judge ruled Dr. Ransom was not a qualified health care provider. We affirm the denial of the exception of prematurity.
Michael Clark and Eva Clark filed an action on July 20, 1990 in malpractice against Dr. Nicholas A. Ransom[1] for negligent acts allegedly occurring on January 6, 1989.
Ransom filed an exception of prematurity urging he is a qualified health care provider and plaintiffs must first go before a medical review panel.
On June 25, 1991 the Patient's Compensation Fund (PCF) opposed the sustaining of the exception and urged that Dr. Ransom was not a health care provider.
Ransom specifies the following specifications of error:
1. The trial court erred in refusing to maintain Dr. Ransom's exception of prematurity where Dr. Ransom was PCF qualified on January 6, 1989, the date of the allegedly negligent surgery;
2. The trial court erred in failing to point to any part of the Medical Malpractice Act which gives fair notice of a requirement that the doctor be PCF qualified on the date the Commissioner of Insurance receives a complaint, and
3. Alternatively, if qualification must exist on the day plaintiffs filed their complaint, the trial court erred in refusing to dismiss Dr. Ransom where he was PCF qualified on the date the complaint was filed by virtue of the continuing PCF qualification of his Louisiana employer and the availability of $100,000 in underlying insurance coverage.
On the date of the alleged malpractice Dr. Ransom had insurance with St. Paul Insurance Company on a "claims made" basis. However, on the date suit was filed, July 20, 1990, he no longer had this insurance. That policy was cancelled July 1, 1989. By the time suit was filed Dr. Ransom was living in Arizona and no longer practicing in Louisiana. The PCF did not consider Dr. Ransom to be a health care provider because inter alia no surcharge to the PCF was being paid either by him or on his behalf. At the time of the alleged negligence he had both the payment of the surcharge and the underlying insurance.
Relator contends Dr. Ransom was an employee of Dr. Larocca and Dr. Larocca continued to pay the surcharge on his behalf. *712 Dr. S. Henry Larocca's affidavit was introduced into evidence. He averred Dr. Ransom was employed by the corporation January 1, 1987 to June 30, 1989 and that the corporation paid the surcharge for the period of 12/31/89 through 12/31/90.
The PCF agrees Dr. Ransom was qualified on the date of the alleged negligence. However, it argues his policy was a "claims made" one and not an "occurrence policy." It further argued on July 1, 1989 there was a request for a refund of $3,444.00 of the surcharge paid for 1989. That request was introduced into evidence. It was a request to cancel coverage effective July 1, 1989. Also introduced was a copy of the check in that amount sent to Dr. Larocca.
At the hearing the trial judge asked counsel the following:
THE COURT:
Let me just ask a general question for my own edification. Are most claims made policies for any kind of professional responsibility, if you want to get out of the policy or retire or whatever, you can buy the tail.
MS. PICOU:
You could.
MR. SHAW:
Absolutely, your honor.
THE COURT:
Can you buy the tail, is it available to doctors who retire or leave the state. Can they buy the tail of the insurance on a claims made policy.
MS. PICOU:
St. Paul always wants to sell insurance.
Additionally, the trial judge reasoned that Abate v. Healthcare Intern., Inc., 560 So.2d 812 (La.1990) requires PCF coverage both at the time of the occurrence and at the time of the claim. His rationale was "I guess the underwriters, what they look to so that they can fund the thing and charge the surcharges. And I find that Dr. Ransom is not covered."
Abate is factually dissimilar from the case at bar. In Abate the physicians were not PCF qualified at the time of the alleged malpractice but were enrolled before suit was filed. The physicians in Abate paid the surcharge at that time and had a "claims made" policy with retroactive coverage. The Supreme Court held the physicians were not health care providers. The court's reasoning at 818 as follows gives guidance to this court, however, in concluding Dr. Ransom was not PCF qualified at the time of the claim at which time no surcharge was paid:
The PCF is funded by surcharges levied annually upon the QHCPs [Qualified Health Care Providers]. Under the theory propounded by defendants, a QHCP whose financial responsibility is established by a claims-made policy is given heightened treatment compared to other QHCPs. Unlike the self-insured QHCPs or the QHCPs with "occurrence" policies, under defendants theory the "claims-made" QHCPs are entitled to PCF coverage for periods during which they had not paid or qualified, merely because their contract with a third-party insurer provides for retroactive coverage. This theory is repugnant to the interests of the fund as well as to tort victims who must rely upon the fund for compensation. It would expose the fund to tort claims arising from periods for which it had not received surcharge payments. It would also increase the possibilities of the fund being diminished or exhausted during the semi-annual period in which claims became final, resulting in claims of tort victims not being honored when they came due. See LSA-R.S. 40:1299.44. [Emphasis added].
We hold that Dr. Ransom is not covered by the Medical Malpractice Act because he was not "qualified" under the Act at the time the claim was made, even though he was "qualified" under the Act at the time of the alleged tortious conduct.
This result is reached because the health care provider was insured by a "claims made" policy, covering only claims made during the policy period, rather than an "occurrence" policy, covering tortious conduct that occurs during the policy period, *713 and the Act ties qualification thereunder to the form of the insurance policy.
La.R.S. 40:1299.42(E) provides, in pertinent part:
... qualification under this section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider ...
Had Dr. Ransom procured an "occurrence" policy, instead of the "claims made" policy, and paid the attendant surcharge, he would be covered by the Act herein, even though he was not qualified at the time the claim was made.
As long as coverage under the Act is tied to the form of the insurance policy, these anomalous results will continue and uncertainty as to coverage will be the rule. In this case, with a "claims made" policy, one cannot determine, at the time of the alleged tortious conduct, whether the health care provider is covered by the Act or not. Rather, that determination can only be made, in hindsight, and possibly some time later. While this is undesirable, it results from a legislatively created provision and is, therefore, a legislative matter.
Accordingly, for the reasons stated the judgment overruling the exception of prematurity is affirmed at relator's cost and the case is remanded for further proceedings in accordance with law.
AFFIRMED.
NOTES
[1] Suit was also filed against Synphes, Inc., the alleged manufacturer of defective screws and plates inserted by Dr. Ransom into Michael Clark's lower back. The hospital where the surgery was performed, i.e. Elmwood Medical Center, was sued as well. St. Paul Fire and Marine Insurance Company was sued as Ransom's insurer.