633 So.2d 247 (1993)
Cheryl A. Murry JONES, individually, and on Behalf of Her Minor Daughter Jennifer Jones
v.
Velma Cockern CROW and ABC Insurance Company.
No. 92 CA 2032.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
*248 Vickie Picou, New Orleans, for defendant-appellant Velma Crow.
James D. Carriere, New Orleans, for plaintiff-appellee.
C.T. Williams, Jr., Elliott Baker, for LA Patient's Compensation Fund.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment denying a dilatory exception pleading the objection of prematurity in a medical malpractice action.

FACTS
On June 12, 1991, plaintiff,[1] Cheryl A. Murry Jones, individually and on behalf of her minor daughter, Jennifer Jones, filed a medical malpractice action against defendant, Velma Cockern Crow, a licensed practical nurse, and ABC Insurance Company. In her petition, plaintiff alleged that all defendants, whether named or undiscovered and unnamed, and whether qualified or nonqualified, were solidarily liable to plaintiff.[2]
The following facts are gleaned from the petition: In March of 1989, plaintiff contacted the office of P. Craig Parker, M.D. and spoke with defendant, who was employed as a nurse by Dr. Parker. Plaintiff informed defendant that she had discovered a lump in her right breast. Defendant, without scheduling an appointment with Dr. Parker, advised plaintiff to have a mammogram performed. Pursuant to these instructions, a bilateral mammogram was performed at Highland Park Hospital on March 30, 1989. Thereafter, defendant advised plaintiff by telephone that the test was benign and instructed plaintiff to have another mammogram in four months. Pursuant to these instructions, plaintiff contacted Dr. Parker's office in August. Again, without scheduling an appointment with Dr. Parker, defendant advised plaintiff to report to the hospital for a mammogram. On August 23, 1989, another bilateral mammogram was performed at Highland Park. Thereafter, defendant contacted plaintiff by telephone and advised her that there were no changes on the mammogram and that "there was nothing to worry about." Again, defendant did not schedule plaintiff for examination by Dr. Parker and advised her to have a repeat mammogram in a year.
On May 25, 1990, plaintiff was examined by a gynecologist who, following a breast examination, referred plaintiff to a general surgeon. On May 28, 1990, a right breast biopsy and right modified radical mastectomy was performed on plaintiff. Thereafter, on May 30, 1990, the pathologist reported that plaintiff had "infiltrating ductal carcinoma with invasion into lymphatics."
In her petition, plaintiff alleged that defendant was a health care provider and that, at the time of the acts giving rise to the instant suit, defendant was employed by Dr. Parker. Plaintiff further alleged that defendant was negligent in the following non-exclusive respects: ordering tests without the supervision of a physician; interpreting test results; failing to schedule an appointment with a physician; and giving medical advice when *249 defendant is not a physician. Moreover, plaintiff alleged that defendant was not a "qualified health care provider" and that plaintiff had been so notified of defendant's status by the Louisiana Patient's Compensation Fund.
Thereafter, defendant filed a dilatory exception pleading the objection of prematurity, contending that she was a "qualified health care provider" under LSA-R.S. 40:1299.41 et seq. and that, as such, a medical review panel must be convened to render an opinion before any litigation can be instituted against her. Defendant further contended that no such medical review panel had been convened to review plaintiff's claims against her.[3]
After a hearing, the trial court determined that defendant was not a qualified health care provider and that, as such, the medical malpractice action instituted against her without convening a medical review panel was not premature. Accordingly, the trial court denied defendant's exception pleading the objection of prematurity and refused to dismiss plaintiff's suit. From this adverse judgment, defendant appealed.[4] Thereafter, the Patient's Compensation Fund filed a petition of intervention with this court.[5]

DILATORY EXCEPTION PLEADING THE OBJECTION OF PREMATURITY
The central issue raised by this objection is whether petitioner's suit was filed prematurely.
LSA-C.C.P. article 926 sets forth the objections which may be raised through the dilatory exception and includes prematurity. LSA-C.C.P. art. 926(1). Prematurity contemplates that the action taken by the petitioner occurs prior to some procedure or assigned time. It is usually utilized in cases wherein the law or contract has provided a procedure for one aggrieved of a decision to seek relief before resorting to judicial action. See Polk v. State, Department of Transportation and Development, 538 So.2d 239, 250-51 (La.1989); Turner v. Maryland Casualty Co., 518 So.2d 1011, 1016-17 (La.1988); Casse v. Sumrall, 547 So.2d 1381, 1383 (La. App. 1st Cir.), writ denied, 551 So.2d 1322 (La.1989); Anderson v. Lanier, 479 So.2d 667, 668 (La.App. 3rd Cir.1985); Waggoner v. American Bank and Trust Company, 423 So.2d 794, 796 (La.App. 4th Cir.1982); In the Matter of Delahoussaye, 409 So.2d 372, 374 (La.App. 1st Cir.1981), writ denied, 413 So.2d 494 (La.1982).
When a defendant files an exception raising the objection of prematurity, the exceptor has the initial burden of showing that an administrative remedy was available by reason of which the judicial action was premature. Steeg v. Lawyers Title Insurance Corporation, 329 So.2d 719, 720 (La.1976); Anderson v. Lanier, 479 So.2d at 668; In the Matter of Delahoussaye, 409 So.2d at 374. Once the existence of an administrative remedy is established by the exceptor, then the burden shifts to the party opposing the exception to show that the administrative remedies have been exhausted. Waggoner v. American Bank and Trust Company, 423 So.2d at 796.
Generally, a person aggrieved of an action must exhaust all "administrative" remedies provided before being entitled to judicial review. See Polk v. State, Department of Transportation and Development, 538 So.2d at 250. The function of the exhaustion doctrine is to give the body whose decision is under attack an opportunity to review, supplement, and, if necessary, correct its decision. See Bonomo v. Louisiana Downs, Inc., 337 So.2d 553, 560-61 (La.App. 2nd Cir.1976). However, this doctrine, like most legal doctrines, *250 is subject to exceptions and limitations. Application of the doctrine to specific cases requires an understanding of its purpose and of the particular administrative scheme involved. McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).

MEDICAL MALPRACTICE ACT
The purpose of the Medical Malpractice Act, LSA-R.S. 40:1299.41 et seq., is to limit the liability of health care providers who qualify under the Act by maintaining specified basic malpractice insurance and by contributing a surcharge to the Patient's Compensation Fund. As long as a health care provider remains qualified under the Act, the health care provider and his insurer are liable for malpractice only to the extent provided in the Act. LSA-R.S. 40:1299.45A; Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992). Moreover, all claims against health care providers covered by the Act are required to be reviewed by a medical review panel. LSA-R.S. 40:1299.47A(1). The burden is on a defendant to prove immunity from suit as a qualified health care provider under the Act. Goins v. Texas State Optical, Inc., 463 So.2d 743, 744 (La.App. 4th Cir. 1985).
The issue presented in this case is whether defendant is a "qualified health care provider" under the Act so as to require that a medical review panel review plaintiff's claims against her prior to the institution of a lawsuit.
At all times pertinent hereto, LSA-R.S. 40:1299.41A(1) defined a "health care provider" as:
[A] person, partnership, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, hospital, community blood center, tissue bank, dentist, registered or licensed practical nurse, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, or any non-profit facility considered tax-exempt under Section 501(c)(3), Internal Revenue Code, pursuant to 26 U.S.C.A. § 501(c)(3), for the diagnosis and treatment of cancer or cancer-related diseases, whether or not such a facility is required to be licensed by this state, or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or an officer, employee, or agent thereof acting in the course and scope of his employment. (Emphasis added).
In the instant case, there is no argument that defendant is a "health care provider" under LSA-R.S. 40:1299.41 in that she is a licensed practical nurse. However, our inquiry does not end here. We must determine whether defendant is "qualified" under the Act so as to bring her within the protections of the Act.
LSA-R.S. 40:1299.42A addresses the qualifications a health care provider must possess to be "qualified" under the Act. LSA-R.S. 40:1299.42A provides as follows:
To be qualified under the provisions of this Part [Part XXIII. Medical Malpractice], a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
(3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
Thus, to qualify, a health care provider must file the type of proof of financial responsibility described in Subsection E and pay the annual Patient's Compensation Fund surcharge levied on the health care provider according to LSA-R.S. 40:1299.44. Abate v. Healthcare International, Inc., 560 So.2d 812, 816 (La.1990). For self insureds, qualification under the Medical Malpractice Act is effective upon the commissioner's acceptance of the proof of financial responsibility and his *251 receipt of payment of the surcharge. Abate v. Healthcare International, Inc., 560 So.2d at 816. For health care providers other than self-insureds, qualification under the Medical Malpractice Act is effective at the time the malpractice insurer accepts payment of the surcharge. Abate v. Healthcare International, Inc., 560 So.2d at 816-17.
For amplification on the proof of financial responsibility a health care provider must file with the commissioner in order to qualify under the Medical Malpractice Act, LSA-R.S. 40:1299.42A(1) references LSA-R.S. 40:1299.42E(1), which provides, in pertinent part, as follows:
Financial responsibility of a health care provider under this Section may be established only by filing with the board proof that the health care provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider, or in the event the health care provider is self-insured, proof of financial responsibility by depositing with the board one hundred twenty-five thousand dollars in money or represented by irrevocable letters of credit, federally insured certificates of deposit, bonds, securities, cash values of insurance, or any other security approved by the board.
By its clear language, Subsection E describes the exclusive methods by which the health care provider's financial responsibility may be established. Abate v. Healthcare International, Inc., 560 So.2d at 817.
Moreover, LSA-R.S. 40:1299.41D provides that:
A health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part, except as hereinafter provided with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under this Part when a claim has been filed against the health care provider for review under this Part. (Emphasis added).
In Abate, the Louisiana Supreme Court reversed a trial court judgment dismissing a plaintiff's medical malpractice action against health care providers pursuant to a dilatory exception pleading the objection of prematurity. The physicians in Abate were not "qualified" at the time of the alleged malpractice, but were enrolled before suit was filed. The physicians paid the surcharge at that time and had a "claims made" policy with retroactive coverage. The supreme court determined that the Medical Malpractice Act does not afford coverage to health care providers who fail to qualify as health care providers under the provisions of the Act prior to the commission of the tortious conduct.
In Clark v. Ransom, 595 So.2d 710 (La. App. 5th Cir.), writ denied, 597 So.2d 1028 (La.1992), our brethren of the Fifth Circuit affirmed a trial court judgment overruling a dilatory exception pleading the objection of prematurity. In Clark, on the date of the alleged malpractice, the physician was insured on a "claims made" basis. However, on the date the suit was filed, the physician had moved to Arizona and was no longer practicing in Louisiana. As a result, the medical malpractice insurance policy had been canceled. The appellate court determined that, because the policy was a "claims made" policy and not an "occurrence" policy, the physician was not covered by the Medical Malpractice Act at the time the claim was made even though he was qualified under the Act at the time of the alleged tortious act.
In the instant case, the evidence presented on the exception pleading the objection of prematurity revealed that St. Paul Fire and Marine Insurance Company issued a policy of medical malpractice insurance covering Dr. P. Craig Parker between August 4, 1989 and August 4, 1990 and that the limits of his liability were the requisite $100,000.00. The evidence also revealed that, although Dr. Parker was afforded coverage for any liability arising from acts or omissions by anyone for whose acts he is legally responsible, defendant *252 was not a named insured under Dr. Parker's malpractice policy nor was she afforded coverage under that policy for any alleged acts of malpractice she committed. Moreover, it was undisputed that defendant has no medical malpractice insurance of her own. The record also revealed that defendant had been advised by the Patient's Compensation Fund that she was not a member of the fund on the date that the alleged malpractice occurred and that, as such, she was not qualified for panel review.
After carefully reviewing the entire record in this matter, we find that, because defendant did not file proof of financial responsibility as set forth in LSA-R.S. 40:1299.42E and because she did not pay the annual Patient's Compensation Fund surcharge levied on health care providers, she is not covered by the Act. As such, plaintiff was not required to convene a medical review panel to review her claim against defendant. Therefore, we find that the trial court did not err in denying defendant's dilatory exception pleading the objection of prematurity.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Defendant is cast for all costs of appeal.
AFFIRMED.
NOTES
[1] Cheryl A. Murry Jones filed suit individually and on behalf of her minor daughter, Jennifer Jones, for the loss of society and services allegedly sustained by the minor child; however, for clarity, we refer to Cheryl A. Murry Jones as plaintiff throughout the opinion.
[2] Plaintiff did not name anyone other than Crow and the fictitious insurer as defendants in this action; however, plaintiff filed another action against defendant's employer, Dr. P. Craig Parker, and a radiologist.
[3] Dr. Parker also filed a dilatory exception pleading the objection of prematurity. At the hearing on defendant's exception, plaintiff's counsel conceded that Dr. Parker was a qualified health care provider and that, as to him, the exception pleading the objection of prematurity was appropriate.
[4] Prior to the filing of the instant appeal, defendant applied for supervisory writs of review. By order dated July 30, 1992, this court denied defendant's writ application and ordered that the matter be remanded to the trial court with instructions to grant her an appeal.
[5] By order, dated July 2, 1993, this court granted the motion to intervene.