770 So.2d 428 (2000)
Shirley Ann GINN
v.
WOMAN'S HOSPITAL FOUNDATION, INC.
No. 99 CA 1691.
Court of Appeal of Louisiana, First Circuit.
September 22, 2000.
Rehearing Denied November 13, 2000.
*429 Keith D. Jones, Baton Rouge, for Plaintiff/Appellee Shirley Ann Ginn.
Peter T. Dazzio, Mary H. Thompson, Baton Rouge, for Defendant/Appellant Woman's Hospital Foundation, Inc.
Before: WHIPPLE, FOGG, JJ. and BECNEL, J. Pro Tem.[1]
*430 WHIPPLE, J.
In this case, defendant, Woman's Hospital Foundation, Inc. (Woman's Hospital), appeals the district court's denial of its dilatory exception pleading the objection of prematurity, contending that plaintiffs case must be submitted for consideration by a medical review panel pursuant to the Medical Malpractice Act prior to the institution of a suit for damages in district court. For the following reasons, we reject defendant's arguments and affirm the judgment of the district court.

FACTS AND PROCEDURAL HISTORY
Plaintiff alleges the facts, as follows, in her petition: In February of 1976, plaintiff was admitted for medical treatment as a patient at Woman's Hospital of Baton Rouge. During the course of this treatment, plaintiff received transfusions of a number of units of whole blood.[2] On March 26, 1997, plaintiff was advised by her treating physician that she had contracted hepatitis C when receiving the blood transfusions from Woman's Hospital in 1976. Prior to this diagnosis, plaintiff was unaware that she had been infected with the hepatitis C virus.
On March 18, 1998, plaintiff filed a petition for damages in the Nineteenth Judicial District Court, Parish of East Baton Rouge, against Woman's Hospital for selling and treating plaintiff with blood contaminated with hepatitis C virus. Defendants filed a "Peremptory Exception of Prescription and Alternative Exception of Prematurity." A judgment was signed by the district court on April 21, 1999, denying both exceptions.
Defendant appeals, contending[3]:
The trial court erred in dismissing Woman's Hospital Foundation Inc.'s Dilatory Exception of Prematurity and erred in finding that this case should not be considered by a medical review panel before suit is filed even though Shirley Ann Ginn was treated at and received transfusions of blood at Woman's Hospital in February of 1976 and again in 1983.

DISCUSSION
The issue raised before this court is whether or not plaintiffs suit was filed prematurely absent initial consideration by a medical review panel pursuant to the Medical Malpractice Act. Stated differently, must a claim: (1) asserted after the adoption of the initial Act, (2) for conduct occurring prior to the Act, (3) which conduct was not covered by the Act when the conduct occurred, (4) but which is later included in the Act, and (5) is covered at the time the claim is asserted, be submitted to a review panel?

DILATORY EXCEPTION PLEADING THE OBJECTION OF PREMATURITY
An exception pleading the objection of prematurity filed pursuant to LSA-C.C.P. *431 art. 926(A)(1) raises the issue of whether the judicial cause of action has not yet come into existence because some prerequisite condition has not been fulfilled. Girouard v. State Through Dept. of Education, 96-1076, p. 4 (La.App. 1st Cir.5/9/97), 694 So.2d 1153, 1155. The exception contemplates that the action taken by the petitioner has occurred prior to some procedure or assigned time, and it is usually utilized in cases wherein the applicable law or contract has provided a procedure for one aggrieved of a decision to seek relief before resorting to judicial action. Hidalgo v. Wilson Certified Express, Inc., 94-1322, p. 4 (La.App. 1st Cir.5/14/96), 676 So.2d 114, 116; Jones v. Crow, 633 So.2d 247, 249 (La.App. 1st Cir. 1993). Generally, the person aggrieved by an action must exhaust all such administrative remedies or specified procedures before being entitled to judicial review. Hidalgo, 94-1322 at p. 4, 676 So.2d at 116; Jones, 633 So.2d at 249.
When a defendant files an exception raising the objection of prematurity, the defendant has the initial burden of showing that an administrative remedy or procedure applies, by reason of which the judicial action is premature. Girouard, 96-1076 at p. 5, 694 So.2d at 1155; Jones, 633 So.2d at 249. Once the existence of an administrative remedy is established, the burden shifts to the plaintiff to show that the specified administrative remedies or procedures have been exhausted or that the present situation is one of the exceptional situations where the plaintiff is entitled to judicial relief because any administrative remedy is irreparably inadequate. Girouard, 96-1076 at p. 5, 694 So.2d at 1155; Jones, 633 So.2d at 249.

MEDICAL MALPRACTICE ACT
The Louisiana Medical Malpractice Act ("the Act") was codified as LSA-R.S. 40:1299.41, et seq., and became effective September 1, 1975. The Act includes such an administrative procedure in that it requires that all medical malpractice claims against covered health care providers be submitted to a medical review panel prior to filing suit in district court. LSA-R.S. 40:1299.41 E; LSA-R.S. 40:1299.47 A and B; Hidalgo, 94-1322 at p. 5, 676 So.2d at 116-117. This administrative procedure affords the medical review panel an opportunity to render its expert opinion on the merits of a complaint. Hutchinson v. Patel, 93-2156, p. 4 (La.5/23/94), 637 So.2d 415, 419.
As originally enacted in 1975, "malpractice" was defined as follows:
(8) "Malpractice" means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient.
Effective August 5, 1976, the definition of malpractice was amended to encompass, among other things, claims "arising from defects in blood" and to provide as follows:
(8) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient. (Emphasis added).
Acts 1976, No. 183 § 1.
Defendant contends that the 1976 amendment to the Act indicates a clear legislative intent for the Act to apply to any act of malpractice raised after September 1, 1975, the date on which the original act took effect. Contending that "[t]he Legislature intended to have one body of medical malpractice law that was effective on one date, September 1, 1975," defendant, in essence, argues that the Act applies to any claim involving malpractice, whether defined as such originally, or later added, if asserted from September 1, 1975 *432 onward. In support, defendant refers to LSA-R.S. 40:1299.41 F, which provides in part:
F. The provisions of this Part do not apply to any act of malpractice which occurred before September 1, 1975.
According to defendant:
The Legislature in 1976 clearly expressed its intent that the amendments to the definition section, including section 1299.41 A(8), applied to the entire Act as it was enacted on September 1, 1975. This intent was expressed in Section 1299.41 F that specifically indicated that the definition changes did not apply to any act of malpractice that occurred before September 1, 1975 the exact effective date of the entire Medical Malpractice Act.

In response, plaintiff contends that the transfusions from which she contracted hepatitis C were administered by defendant in February of 1976. Plaintiff argues that at the time of the transfusions, the Act made no mention of claims arising from defects in blood, and the Act was not amended to encompass such claims until August 5, 1976. Thus, plaintiff contends, this case does not fall within the purview of the Act, and plaintiff's cause of action for damages against the purveyor of the blood is not a claim which must be submitted to a review panel for consideration as a "covered claim" under the Act. We agree.
Defendant's interpretation of section (F) rests upon the assumption that the 1976 amendments apply retroactively to September 1, 1975, the effective date of the original Act. However, we find this application to be in direct contravention of the August 5, 1976, effective date of the amendments specifically assigned by the legislature. Thus, we are not persuaded by this argument.
When plaintiff's alleged injury occurred, she acquired a cause of action in strict tort liability under Civil Code article 2315, which is a vested property right protected by the guarantee of due process. Faucheaux v. Alton Ochsner Medical Foundation Hospital and Clinic, 470 So.2d 878, 878-879, (La.1985). Legislation enacted after the acquisition of such a vested property right, therefore, cannot be retroactively applied so as to divest plaintiff of her cause of action because such a retroactive application would contravene the due process guaranties. Terrebonne v. South Lafourche Tidal Control, 445 So.2d 1221, 1224-1225 (La.1984); Faucheaux, 470 So.2d at 879 (La.1985). Additionally, even interpretive legislation cannot operate to disturb already vested rights. The Legislature cannot retroactively affect, under the guise of interpretive legislation, substantive rights vested under earlier unambiguous legislation. See Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576 (La.1974).
Noting that the blood transfusions allegedly contaminated with hepatitis C were received by plaintiff prior to the effective date of the amendment, plaintiff contends that this case does not fall under the purview of the Act and relies upon Branch v. Willis-Knighton Medical Center, 636 So.2d 211 (La.1994), a case she sets forth as "factually indistinguishable" from the case at hand, in support of her position.
In Branch, the Supreme Court also considered a claim arising out of a blood transfusion administered prior to the effective date of the 1976 amendments to the Medical Malpractice Act. As in the case now before us, at the time the transfusion at issue in Branch was performed, the original version of the Act (as enacted in 1975) contained no reference to defective blood transfused into a patient. The issue in Branch was whether a strict liability action arising out of conduct not expressly covered by the then applicable definition of malpractice would be governed by the time periods for filing limitation set forth in LSA-R.S. 9:5628. Construing the statutes in reference to each other, the Supreme Court found no indication that the legislature intended in 1975 to embrace strict liability claims within the statutory frame-work *433 enacted to govern malpractice cases. See Branch v. Willis-Knighton Medical Center, 636 So.2d at 214; Boutte v. Jefferson Parish Hospital Service District No. 1, 99-2402, 759 So.2d 45 (La.4/11/00).
Applying the reasoning set forth in the above jurisprudence, we likewise find that the law prior to the amendment of LSA-R.S. 40:1299.41, effective August 5, 1976, permits plaintiff herein to assert a strict liability claim for damages allegedly sustained as a result of blood transfusions prior to the date of such legislation. See Seal v. St. Tammany Parish Hospital Service District No. 1, XXXX-XXXX, (La.6/30/00), 765 So.2d 1057.[4]
As plaintiffs claim arises from blood transfusions received in February of 1976 and the amendments to the Act encompassing blood related defects were not effective until August 5, 1976, plaintiffs claim is not governed by the Medical Malpractice Act. Having determined that there is no administrative remedy or procedure required to address the claim giving rise to this suit, defendant's exception of prematurity was properly denied by the district court, and plaintiffs institution of judicial action was not premature.

CONCLUSION
Accordingly, the April 21, 1999 judgment of the district court denying defendant's dilatory exception pleading the objection of prematurity is hereby affirmed. Costs of this appeal are hereby assessed to defendant, Woman's Hospital Foundation, Inc.
AFFIRMED.
NOTES
[1] Judge Mary Hotard Becnel of the Fortieth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Defendant contends that plaintiff's medical records show that plaintiff also received a blood transfusion in 1983 and that any claims arising from that transfusion would fall within the purview of the Act. In support of this contention, defendant introduced a certified copy of plaintiff's medical records from her admittance at the hospital in 1976 and in 1983 and the deposition testimony of plaintiff's physician, Dr. Frank B. Wolfsheimer, at the hearing on the exception. See LSA-C.C.P. art. 930.

However, Dr. Wolfsheimer testified that because the units of blood used for the transfusions both in 1976 and 1983 are unavailable for testing, he is unable to determine with any degree of certainty which units were contaminated at the time of the transfusions. Thus, since plaintiff is only claiming damages arising from the 1976 transfusion, for the purposes of this court's review of the exception, we limit our discussion to those claims as pled. If it is later determined that the virus was, in fact, contracted from the blood received in the 1983 transfusions, any claim arising from that contraction presumably would be governed by the Act. Boutte v. Jefferson Parish Hospital Service District No. 1, 99-2402, p. 3 (La.4/11/00), 759 So.2d 45, 47-48.
[3] Inasmuch as defendant's appeal does not challenge the portion of the judgment denying the exception of prescription, we pretermit discussion of this issue.
[4] In Seal, the transfusion at issue was received in 1973, and the plaintiff was diagnosed with Hepatitis C in 1996. Plaintiff asserted a claim for damages in strict liability and this court reversed the district court's denial of a motion for summary judgment. The Supreme Court granted an application for Supervisory and/or Remedial Writs, reversing this court for reasons assigned in a written dissent from the denial of rehearing. Although the issues in Seal differ from those in the case at hand, the dissenting opinion relied on Branch and DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981), in finding that the law prior to the effective dates of LSA-R.S. 9:2797 and LSA-C.C. art. 2322.1 permits a plaintiff to assert a strict liability claim for damages allegedly sustained as a result of blood transfusions received prior to the effective dates of such legislation.

We likewise find that plaintiff herein can file suit without first submitting her claim for review by the medical review panel as, at the time her claim arose, the legislation requiring review pursuant to the Act was not yet effective.