WHIPPLE, J.
This case is again before us, on appeal by intervenor, the Louisiana Patient’s Compensation Fund (“the Fund”), from an adverse judgment rejecting the Fund’s challenge to the status of Woman’s Hospital Foundation, Inc. (‘Woman's Hospital”) as a qualified health care provider under the Louisiana Medical Malpractice Act (“the Act”), as designated in a court-approved settlement between the parties, Shirley Ann Ginn and Woman’s Hospital. Also before us is a motion to dismiss the Fund’s appeal, filed by Woman’s Hospital. For the following reasons, we deny the motion to dismiss the appeal and affirm the judgment of the district court.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Shirley Ann Ginn, received blood transfusions at Woman’s Hospital in 1976 and 1983. In March of 1997, plaintiff was informed by her treating physician that she had contracted hepatitis C. In March of 1998, plaintiff filed a petition for damages against Woman’s Hospital, asserting strict liability claims for selling and treating her with contaminated blood during the February, 1976 hospitalization.
In response, Woman’s Hospital filed a peremptory exception of prescription and a dilatory exception pleading the objection of prematurity, both of which were denied by the district court. Woman’s Hospital earlier appealed the denial of its exception of prematurity, contending that pursuant to the Act, plaintiff was required to submit her claim for consideration by a medical review panel prior to the institution of a suit for damages in district court. On appeal, this court affirmed the district court’s denial of the exception of prematurity, finding that plaintiffs claims arose from blood transfusions received in February of 1976, prior to the |3effective date of the amendments to the Act,[1] and therefore, were not governed by the Act. Thus, we determined that plaintiffs institution of judicial action was not premature. See Ginn v. Woman’s Hospital Foundation, Inc., 99-1691 (La.App. 1st Cir.9/22/00), 770 So.2d 428, writ denied, 2000-3397 (La.2/02/01), 784 So.2d 647.
*985 Subsequently, plaintiff amended her petition in December of 2000 to include allegations of negligence and breach of care arising from the 1988 transfusions, as well as the 1976 transfusions.[2] Specifically, plaintiff amended certain paragraphs setting forth her malpractice claim as follows:
2A.
On January 5, 1983, your petitioner was again treated at a hospital owned and operated by defendant and received, during that hospitalization, transfusions of two (2) units of whole blood.
* * * *
5A.
Prior to the transfusions received by your petitioner from defendant in 1976 and 1983, defendant failed to meet the applicable standard of care in its processing and administration of the blood in the following respects:
a. Defendant failed to advise your petitioner of the dangers associated with the administration by transfusion of whole blood, and particularly failed to advise your petitioner that the blood could be contaminated with the virus known at that time as hepatitis, non-A and non-B;
b. Defendant failed to secure your petitioner’s informed consent for the transfusion procedures;
c. Despite the fact that it knew that units of blood which showed elevated liver enzyme levels of SGOT and SGPT were more likely to be infected with hepatitis, non-A, non-B than were units of blood not tested for those liver enzyme levels, defendant nevertheless failed |4to test the units of blood administered to your petitioner for elevated liver enzymes.
Woman’s Hospital and plaintiff later agreed to settle the case, and petitioned the district court for judicial approval of the settlement pursuant to the provisions of LSA-R.S. 40:1299.41, et seq. According to the terms of the settlement, Woman’s Hospital agreed to remit payment in the amount of $100,000.00 to plaintiff, thereby releasing it from any further liability pursuant to the Act, and plaintiff reserved her right to pursue recovery of the additional amount of $400,000.00, plus interest and medical expenses, from the Fund. Thus, plaintiff filed a petition seeking court approval of the settlement of the medical malpractice claim and the reservation of her rights against the Fund to determine excess damages pursuant to LSA-R.S. 40:1299.44(C).
The Fund[3] then filed a petition of intervention, opposing the settlement. In the intervention, the Fund contended that the benefits afforded under the Act did not apply to this claim because: (1) Woman’s Hospital was not a qualified health care provider under the Act because it had not paid the surcharge required by the Fund pursuant to LSA-R.S. 40:1299.42(A)(2), and (2) the court of appeal had already ruled that the claim presented by plaintiff was not a medical malpractice claim cognizable under the Act.[4]
*986 A hearing to approve the settlement was held before the district court on January-30, 2001. After considering the testimony and evidence presented, the | [¡district court rejected the Fund’s contentions and rendered oral reasons granting plaintiff the authority to settle with Woman’s Hospital pursuant to the provisions of the Act. A written judgment in conformity with the court’s reasons was rendered on January 30, 2001, containing the following provisions:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment approving the settlement by and between the plaintiff, Shirley Ann Ginn and defendant, Woman’s Hospital Foundation, Inc., pursuant to the provisions of La.R.S. 40:1299.44(C)(4) authorizing and requiring the payment of ONE HUNDRED THOUSAND AND NO/lOO ($100,000.00) DOLLARS by Woman’s Hospital Foundation, Inc. to plaintiff, and also requiring plaintiff to execute release and dismissal documents consistent with the settlement agreement;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the liability for damages as alleged in the original and First Supplemental and Amending Petitions filed by plaintiff of Woman’s Hospital Foundation, Inc. and the Patient’s Compensation Fund be, and it is hereby deemed established and admitted pursuant to La[.]R.S. 40:1299.44(C)(5) for the damages suffered by plaintiff herein as alleged in the original and first supplemental] and amending petitions subject to a credit in favor of the Patient’s Compensation Fund in the amount of $100,000.00 dollars representing the amount paid by Woman’s Hospital Foundation, Inc.;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff is hereby granted the right to seek additional damages from the Patient’s Compensation Fund for those damages in excess of $100,000.00 dollars which she has suffered as a result of the injuries alleged in her original and First Supplemental and Amending Petitions.
The Fund then filed an application for supervisory writs of review from the judgment of the district court[5] as well as a motion for devolutive appeal to this court. Woman’s Hospital filed a motion to dismiss the Fund’s devolutive appeal.[6] The writ application and motion to dismiss were referred to the merits of this appeal.
I ^DISCUSSION

Motion to Dismiss

Woman’s Hospital filed a motion to dismiss the Fund’s appeal herein, contending that the Act, specifically LSA-R.S. 40:1299.44(0(6), clearly prohibits the appeal of any settlement approved by the court.[7] Louisiana Revised Statutes 40:1299.44(0(6) provides as follows:
*987 Any settlement approved by the court shall not be appealed. Any judgment of the court fixing damages recoverable in any such contested proceeding shall be appealable pursuant to the rules governing appeals in any other civil court case tried by the court.
In response, the Fund contends that it is not appealing the “settlement” per se, but rather from “specific substantive and procedural requirements of the [A]et.” Contending that it has no objection to the parties’ settling the instant case, the Fund denies that Woman’s Hospital enjoys any coverage under the Act. Thus, the Fund challenges the finding by the district court that Woman’s Hospital was a qualified health care provider, disputing: (1) the correctness of the amount of the surcharge paid by Woman’s Hospital; and (2) the court’s holding that payment by Woman’s Hospital satisfies the requirements of the Act, as Woman’s Hospital was not a qualified self-insured health care provider.
In support of its position that the Fund’s appeal should be dismissed, Woman’s Hospital cites Zumo v. Our Lady of the Lake Regional Medical Center, 96-0492 (La.App. 1st Cir.4/1/99), 730 So.2d 1080. In Zumo, where the Fund filed a petition to intervene and motion for new trial only after the rendition of a judgment of malpractice with damages in excess of $100,000.00, this court determined that, pursuant to LSA-R.S. 40:1299.44(0(6), the Fund has an interest in appealing a malpractice judgment only during the appeal process. As the [ 7judgment of the district court was not a final and appealable judgment while the motion for new trial was pending, the motion for new trial was not part of the appeal process and therefore, this court found that the Fund could not intervene at that point. Zumo, 96-0492 at pp. 3-4, 730 So.2d at 1082. Also, in Zumo, unlike the instant case, there was no dispute as to defendant’s status as a qualified health care provider.
We find the issues in Bennett v. Krupkin, 2001-0209 (La.10/16/01), 798 So.2d 940, similar to the issues presented in this case. In Bennett, the Supreme Court determined that the Patient’s Compensation Fund Oversight Board had standing to appeal a judgment of the trial court granting a doctor’s exception of prematurity, where the Board/Fund claimed the doctor was not a qualified health care provider and therefore, should not be afforded coverage under the Act. The Board argued that as the entity statutorily responsible for defending the Fund, it has an interest in a judicial determination of whether or not the defendant doctor was a qualified health care provider under the Act, and that the court of appeal erred in dismissing its appeal, in direct contravention of LSA-C.C.P. articles 1091, 2083, and 2086. The Supreme Court agreed, finding that the Board was clearly an interested party entitled to intervene to contest the doctor’s status under the intervention statutes,[8] and furthermore, that the Board, in fact, had a duty to do so under the general *988 particles granting the Board responsibility and authority for the management and defense of the Fund.[9] Thus, the Court held as follows:
The Board has asserted that Dr. Krupkin is not a qualified health care provider on numerous occasions, i.e., after the Bennetts filed their medical malpractice complaint with the Board, in its petition of intervention seeking a decision as to whether Dr. Krupkin was covered by the MMA, in its motion for summary judgment, in its opposition to Dr. Krupkm’s exception of prematurity, in its Motion for New Trial on Dr. Krup-kin’s exception of prematurity, and in its appeal of that judgment. The Board is clearly an interested party entitled to intervene and appeal under the intervention statutes, and, in fact, has the duty to defend the Fund under La. R.S. 40:1299.44(A)(5)(b), La. R.S. 40:1299.44(D)(2)(a), and La. R.S. 40:1299.44(D)(2)(b)(x). This is particularly evident here, where the Board is the only party or entity claiming that the health care provider is not a qualified health care provider entitled to coverage under the MMA. Accordingly, we find that the Board has standing to appeal the trial court’s judgment granting Dr. Krupkin’s exception of prematurity.
Bennett v. Krupkin, 2001-0209 at p. 10, 798 So.2d at 946.
Citing the applicable intervention statutes, the Supreme Court further concluded, “As a party who could have, and did, intervene in the trial court, the Board has a right to appeal under La. C.C.P. art. 2086.” Bennett, 2001-0209 at p. 7, 798 So.2d at 944.
In the instant case, the Fund filed its petition for intervention upon receiving notice of the parties’ intentions to settle the claim, with plaintiff reserving all rights against the Fund. The Fund then filed an “Objection to Proposed Settlement” and 13memorandum in support thereof, further asserting its objections to the settlement, and denying Woman’s Hospital’s status as a qualified health care provider. The Fund maintained its objections to Woman’s Hospital’s status throughout the proceedings below and at the evidentiary hearing on the settlement conducted by the district court. Moreover, the Fund clearly has an interest in the outcome of these proceedings. Specifically, if the district court judgment approving the settlement is affirmed, the Fund may be liable for up to $400,000.00 in damages.
The Supreme Court’s comments in Williams v. Kushner, 449 So.2d 455 (La.1984), wherein the Court discussed the status of the Fund as an intervenor after a settlement, are also relevant:
The status of the Fund after a settlement between the claimant and the health care provider is more in the nature of a statutory intervenor rather than a party defendant. The Fund is *989 similar to an intervenor in that it is a third person who has an interest in the proceedings between the claimant and the health care provider because any damages in excess of $100,000 are payable from the Fund. Just as an interve-nor may do, the Fund may put on evidence and unite with the defendant in resisting the claimant’s demand. Compare La.R.S. 40:1299.44(0(3) & (C)(5) with La.Code Civ.P. art. 1091(2). Also both an intervenor and the Fund may appeal a judgment of the court in a contested proceeding. Compare La.R.S. 40:1299.44(0(6) with La.Code Civ.P. arts.2082 & 2086. (Emphasis added.)
Williams, 449 So.2d at 458, n. 16.
Although we note some distinctions between the Bennett case and the instant case, ie. Bennett arose as an appeal of the district court’s grant of an exception of prematurity, while the case herein arises from an appeal of a judgment of the district court approving a settlement under the Act, we find the Court’s analysis of the Fund’s interest, as an intervening party, in the determination of whether a health care provider is qualified under the Act, equally applicable herein. On review, we find no bar herein to the intervenor’s right to appeal the issue of coverage.
As in Bennett, the Fund has maintained its objections to coverage throughout the proceedings below, at the hearing before the district court, and at |inthe appellate level. Considering the Fund’s statutory authority to defend against claims of non-covered health care providers pursuant to LSA-R.S. 40:1299.44(D)(2)(b)(x), and, further, the deprivation of basic statutory rights of appeal granted an intervening party that would result herein if the Fund were not afforded the opportunity to appeal the litigated issue of coverage, we find the Court’s analysis in Bennett equally compelling herein. See LSA-C.C.P. art. 2086.
Moreover, we interpret the settlement provisions enlisted in LSA-R.S. 40:1299.44(0 to presuppose the absence of a dispute as to the status of the health care providers involved as qualified health care providers under the Act. See Bennett, 2001-0209 at pp. 8-9, 798 So.2d at 945-946. The issue of the status of Woman’s Hospital as a qualified health care provider is at the heart of the dispute herein. Applying the above statutes and jurisprudence, we find that by intervening in the proceedings below to challenge the settlement, and the underlying determination of the status of the involved health care provider, the Fund adequately preserved its right to oppose both plaintiff and defendant, Woman’s Hospital, and to appeal the district court’s finding of coverage. See LSA-C.C.P. art. 1091.
Thus, we find no merit to and deny the motion to dismiss the appeal.

The Merits on Appeal

The Medical Malpractice Act confers upon qualified health care providers two principal advantages in actions against them for malpractice. First, the liability of a qualified health care provider for all malpractice claims for injuries to or death of any one patient may not exceed $100,000.00, and the total amount recoverable from all defendants and the Fund for all malpractice claims for injuries to or death of any one patient, exclusive of future medical care and related benefits, may not exceed $500,000.00, plus interest and costs. LSA-R.S. 40:1299.42(B). Second, as stated above, no action for malpractice against a qualified health care |-nprovider or his insurer may be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered *990 its opinion on the merits of the complaint, unless the parties agree to waive this requirement. LSA-R.S. 40:1299.47(A); Dunn v. Bryant, 96-1765, p. 5 (La.App. 1st Cir.9/19/97), 701 So.2d 696, 699, writ denied, 97-3046 (La.2/13/98), 709 So.2d 752.
Health care providers may take advantage of these benefits only if they qualify under the Act by meeting certain statutory requirements as set forth in LSA-R.S. 40:1299.42(A). These benefits are bestowed on health care providers as long as they remain qualified under the Act. LSA-R.S. 40:1299.45(A). The burden is on a defendant to prove prematurity and initial immunity from suit as a qualified health care provider under the Act. Dunn, 96-1765 at p. 6, 701 So.2d at 699.

Settlement of Claims Under the Act

Louisiana Revised Statutes 40:1299.44(0) sets forth the procedure for settlement of a claim arising under the Act and the demanding of any excess from the Fund. Initially, a petition must be filed by the claimant seeking: (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient’s compensation fund. LSA-R.S. 40:1299.44(0(1). Second, a copy of the petition must be served on the board, the health care provider and his insurer, at least ten days before filing and must contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded. LSA-R.S. 40:1299.44(0(2). Third, the board and the insurer of the health care provider or the self-insured provider, as the case may be, may agree to settle with the claimant or may file written objections to the payment of the amount demanded. The agreement or any objections to the payment must be filed within |1?.twenty days after the petition is filed, and the matter is then fixed for hearing by the court. LSA-R.S. 40:1299.44(0(3) and (4).
Finally, at the hearing, the board, the claimant, and the insurer of the health care provider or self-insured health care provider (“the insurer”), as the case may be, may introduce relevant evidence to enable the court to determine whether the petition should be approved if it is submitted on agreement without objections. If the board, the insurer, and the claimant cannot agree on the amount, if any, to be paid from the Fund, then the court shall determine the amount of claimant’s damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the Fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the Fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars. LSA-R.S. 40:1299.44(0(5).
In the case herein, the parties followed the statutory procedures outlined above and the district court approved the settlement of plaintiffs claim as arising against a health care provider qualified under the Act.

Coverage Under the Act

Having determined that the Fund, as an intervenor, has the right to appeal the issue of coverage under the Act after approval of a settlement by the district court, we now address the merits of the appeal.
The Fund contends the district court erred in approving the settlement pursuant to LSA-R.S. 40:1299.44(0(5), as Worn- *991 an’s Hospital was not a qualified health care provider, it had not filed proof of coverage with the Fund, it had not paid the surcharge for the particular risk involved in the 1983 transfusions, and 113there was no underlying coverage at- all for the 1976 transfusions. The Fund argues further that the court erred in approving the settlement pursuant to LSA-R.S. 40:1299.44(0(5), as the procedural requirements of the Act were not followed. Specifically, the Fund contends that the hospital that paid the settlement was not a qualified self-insured health care provider, as it had not posted a bond and had not paid the proper amount of surcharge.
Louisiana Revised Statutes 40:1299.42 sets forth the requirements for a health care provider seeking to qualify under the Act as follows:
A. To be qualified under the provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
(3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
On January 30, 2001, a hearing was held before the district court in which plaintiff, Woman’s Hospital, and the Fund fully participated. The parties presented the testimony of Mary Thompson, general counsel for Woman’s Hospital; Cheryl Jackson, the malpractice insurance director for the Fund; and Lorraine LeBlanc, claims officer for the Office of Risk Management and the Fund. The affidavit of Thomas High-tower, former Administrator and Chief Executive Officer of Woman’s Hospital, and a copy of a canceled check in the amount of $4,416.00 payable to the hospital’s insurance agent were introduced. Also introduced were: two “Certificates of Enrollment” from the Patient’s Compensation Fund showing “claims made” coverage by St. Paul Fire & Marine Insurance Co. (“St.Paul”) from October 18, 1975 to October 1, 1986, and “occurrence” coverage by the Louisiana Hospital Association Trust Fund (“LHA”) from October 18, 1986 to November 1,1142000; a certificate of “prior acts” coverage by the LHA Trust Fund from October 18, 1986 retroactive to November 1, 1976; the entire suit record of the district court; and the evidence envelope of the prior proceedings of this matter.
After hearing the testimony and reviewing the evidence presented at the hearing, the district court rendered oral reasons as follows:
Based upon the current state of the law, based upon the certificate of enrollment as exhibit one, and considering the affidavit of Mr. Hightower and the attachments thereto, considering the amended petition and after reviewing the memoranda, listening to the testimony and the argument of counsel, and further considering the very peculiar facts of this case, the court grants the authority to plaintiff to settle with the hospital pursuant to the provisions of the Louisiana Medical Malpractice Act.
In support of its argument that Woman’s Hospital is not a qualified health care provider, the Fund claims that the St. Paul policy did not provide “tail” coverage, which would have provided coverage for claims arising' from events that occurred during its policy period but that arose after termination of the policy in 1986, as no surcharge was paid for such coverage. *992 The Fund admits that although the LHA policy provided “prior acts” coverage, the LHA reported the policy to the Fund as an “occurrence” policy and remitted only that surcharge.[10]
In response, Woman’s Hospital relies upon the affidavit of Thomas R. Hightower, the Chief Executive Officer and Administrator of Woman’s Hospital at all pertinent times herein, who attested:
that the hospital paid all amounts it was requested to pay for full malpractice coverage, including tail coverage in the event it terminated its coverage with St. Paul, and Woman’s Hospital specifically relied on the representations and other statements made by the Patient’s Compensation Fund and by its agent for St. Paul Insurance Company that if it made the payment for the full amount of Four Thousand Four Hundred Sixteen and 00/100 ($4,416.00) Dollars that it would cover any and all claims as a | ^result of malpractice coverage during the period of October 18, 1975 through October 18, 1976, and the hospital expected this full coverage to include any and all claims made against the hospital from and after 1975-1976 through the present time if it arose out of alleged malpractice or other allegedly improper conduct or breaches of medical standards of care by the hospital during the specific policy period and dates of October 18, 1975 through October 18, 1976. The undersigned can further specifically state that he was never advised by the Louisiana Patient’s Compensation Fund nor was he ever advised by St. Paul or any other insurance agency that Woman’s Hospital did not have anything but complete and full coverage, including tail coverage, for the years October 18, 1975 through October 18, 1976. Specifically, Woman’s Hospital was led to believe that it had full coverage during these dates regardless of when the claim was made or when the claim was asserted, as long as it paid the full amount of ■ the premium for the 1975-1976 year and that Woman’s Hospital relied upon the statements and representations made to it by the Louisiana Patient’s Compensation Fund and by St. Paul Fire and Marine Insurance Company through its agents or brokers as the case may be. (Emphasis added.)
In further support of Woman’s Hospital’s contention that it was, at all times pertinent hereto, a qualified health care provider, the hospital cites upon the testimony of Lorraine LeBlanc, claims officer for the Fund, who identified a certificate of “Prior Acts Coverage” issued to Woman’s Hospital from the LHA, which granted prior acts coverage for the period of October 18, 1986 retroactive to November 1, 1976. The Fund maintains, however, that irrespective of Woman’s Hospital’s purchase and receipt of this coverage as verified by the certificate of “prior acts” coverage from, the LHA, the hospital is not a qualified provider, as the Fund did not receive the proper surcharge for this type of coverage.
Considering the certificates of coverage issued by the Fund, and the record in its entirety, we find no error in the trial court’s determination that Woman’s Hospital was a qualified' health care provider and had continuous coverage from October 18, 1975 through November 1, 2000. With *993 regard to the collection of surcharges and appropriateness of the amount collected, the statutes make clear that where proof of financial responsibility is established through the purchase of an insurance policy, the responsibility for collecting the proper annual surcharge h alies with the insurer. LSA-R.S. 40:1299.44(A)(2)(a) and (A)(2)(d). The insurer must then remit the surcharge collected to the Fund within forty-five days of the payment of the premium. LSA-R.S. 40:1299.44(A)(3)(a) and (b). The statutes further provide that if the insurer fails to remit the appropriate surcharge, the Fund is authorized to assess a penalty against the insurer and to collect attorney’s fees against the insurer or to pursue legal remedies against the insurer including attorney’s fees. LSA-R.S. 40:1299.44(A)(3)(a) and (b) and 40:1299.44(A)(4). There is simply no provision in the Act authorizing the Fund to terminate or otherwise restrict the insured health care provider’s qualification under the Act if an improper surcharge is collected by the commercial insurer. Thus, any dispute over the actuarial computation of the surcharge or collection of the surcharge is to be resolved between the Fund and the insurer. Bennett v. Krupkin, 2000-0023, pp. 8-9 (La.App. 1st Cir.3/28/02), 814 So.2d 681, 686; see also Brown v. St. Paul Fire & Marine Insurance Company, 31,777, pp. 2-3 (La.App. 2nd Cir.3/31/99), 731 So.2d 953, 954-955, writ denied, 99-1211 (La.6/4/99), 744 So.2d 634.
In the instant case, Woman’s Hospital purchased a “claims made” policy from St. Paul for the period of October 18, 1975 to October 1, 1986, and then purchased an “occurrence” policy from the LHA for the period of October 18, 1986 to November 1, 2000. When changing insurers in 1986, Woman’s Hospital, in addition to the “occurrence” policy also purchased and received a certificate of insurance for “prior acts” coverage by the LHA, for the period of October 18, 1986 retroactive to November 1, 1976. As indicated in the affidavit testimony of Thomas Hightower, Woman’s Hospital “specifically relied on the representations and other statements made by the Patient’s Compensation Fund and by its agent for St. Paul” “for full malpractice coverage, including tail coverage in the event it terminated its coverage with St. Paul.”
|17It is undisputed that during the period in question, the insurers collected and remitted to the Fund a surcharge associated with the above coverage. The Fund’s argument that the surcharge collected for the period of qualification was aetuarially insufficient, because the Fund allegedly was not aware that the coverage was for “prior acts” coverage, has no effect on and can not defeat Woman’s Hospital’s status as a qualified provider herein. Bennett, 2000-0023 at p. 10, 814 So.2d at 687; Brown, 31,777 at p. 3, 731 So.2d at 955.
Accordingly, considering the record herein, we find no error in the district court’s findings herein or in its conclusion that Woman’s Hospital was a qualified health care provider under the Act with respect to plaintiffs claim. Thus, the settlement agreement between the parties was properly approved by the district court in compliance with the mandates of the Act.
These assignments lack merit.
CONCLUSION
Based on the above and foregoing, the motion to dismiss the Fund’s appeal, filed by Woman’s Hospital Foundation, Inc., is denied. The January 30, 2001 judgment of the district court approving the settlement agreement between plaintiff and Woman’s Hospital Foundation, Inc. is affirmed. *994 The Fund’s application for supervisory-writs is likewise denied.
Costs in the amount of $1,459.81 are assessed against intervenor, the Louisiana Patient’s Compensation Fund.
MOTION TO DISMISS APPEAL DENIED; JUDGMENT ON THE MERITS AFFIRMED; WRIT DENIED.

. Effective August 5, 1976, the definition of malpractice under the Act was amended to encompass, among other things, claims "arising from defects in blood.” Acts 1976, No. 183 § 1.

. Plaintiff’s physician testified he was unable to determine with any degree of certainty whether blood from the 1976 or the 1983 transfusions was contaminated.

. The petition for intervention was filed by the Louisiana Patient’s Compensation Fund Oversight Board and the Louisiana Patient's Compensation Fund. We refer to them collectively throughout this opinion as "the Fund.”

.Referring to this court’s decision in Ginn v. Woman’s Hospital Foundation, Inc., 99-1691 (La.App. 1st Cir.9/22/00), 770 So.2d 428, writ denied, 2000-3397 (La.2/02/01), 784 So.2d 647, the Fund incorrectly asserts that we de *986 termined that plaintiff's claim is not a medical malpractice claim under the Act. In Ginn, we determined that plaintiffs claims arising from the 1976 transfusions, as pled in her original petition for damages, arose prior to the effective date of the amendments to the Act, and were not governed by the Act. Ginn, 99-1691 at p. 8, 770 So.2d at 433. This decision was rendered prior to the filing of plaintiff’s amended petition, wherein she asserted claims of medical malpractice arising from the 1983 transactions.

. Shirley Ann Ginn v. Woman’s Hospital Foundation, Inc., 2001 CW 0379 (La.App. 1st Cir.7/02/01).

. Shirley Ann Ginn v. Woman’s Hospital Foundation, Inc., 2001 CA 1194 (La.App. 1st Cir. 1/07/02).

. Plaintiff and The St. Paul Insurance Company likewise filed briefs supporting the motion to dismiss.

. In pertinent part, LSA-C.C.P. art. 1091 provides:
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(1)Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiff's demand; or
(3) Opposing both plaintiff and defendant.
Also, LSA-C.C.P. art. 2086 provides:
A person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken.

. Pursuant to LSA-R.S. 40:1299.44(A)(5)(b):
The functions of collecting, administering, and protecting the fund, including all matters relating to establishing reserves, the evaluating and settlement of claims, and relating to the defense of the fund, shall be carried out by the board.
Further, as provided in LSA-R.S. 40:1299.44(D)(2)(a):
The board shall be responsible, and have full authority under law, for the management, administration, operation and defense of the fund in accordance with the provisions of this Part.
Also, LSA-R.S. 40:1299.44(D)(2)(b)(x) sets forth the duty of the Board to:
Defend the fund from all claims due wholly or in part to the negligence or liability of a non-covered health care provider or a product manufacturer, or both regardless of whether a covered health care provider has settled and paid its statutory maximum, or has been adjudged liable or negligent.

. Under a “claims made” policy, coverage is effective only if the negligent harm is discovered and reported within the policy term. This is in contrast with an "occurrence” policy, where the coverage is effective if the negligent harm occurs within the policy period, regardless of the date of discovery. Hedgepeth v. Guerin, 96-1044, p. 6 (La.App. 1st Cir.3/27/97), 691 So.2d 1355, 1359, writ denied, 97-1377 (La.9/26/97), 701 So.2d 983.