831 So.2d 1050 (2002)
Evelyn PERDUE
v.
Dr. E. Ward SUDDERTH and Westbank Medical Clinic, Inc.
No. 02-CA-357.
Court of Appeal of Louisiana, Fifth Circuit.
October 29, 2002.
*1051 Bryon J. Casey, III, Metairie, LA, for plaintiff-appellant.
Stephanie B. Laborde, Milling Benson Woodward, Baton Rouge, LA, for defendant-appellee.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
The Plaintiff, Evelyn Perdue, seeks relief from the trial court's granting of summary judgment in favor of the Defendant, the Louisiana Patient's Compensation Fund. We reverse the judgment of the trial court and remand for further proceedings.

FACTS
On January 30, 1996 Evelyn Perdue (Perdue) filed a medical malpractice claim with the Louisiana Patient's Compensation Fund (PCF) against Dr. E. Ward Sudderth. By letter to her counsel dated February 13, 1996, Perdue was informed by the PCF that Dr. Sudderth was a qualified self-insured health care provider according to the Louisiana Medical Malpractice Act ("the Act"). As provided for by the Act, Dr. Sudderth and the other physicians in his medical group had placed a $125,000 certificate of deposit with the PCF in order to show proof of financial responsibility, which is a requirement for being self-insured. This certificate of deposit was still held by the PCF at the time Perdue filed her claim. However, other claims had been pending against Dr. Sudderth and one claimant obtained a judgment in the amount of $375,000 against Dr. Sudderth. As a result, the $125,000 certificate of deposit was used to satisfy the judgment.
On July 30, 1996, Dr. Sudderth was sent notice that his self-insured deposit was impaired and he had five days in which to restore the deposit or he would lose his coverage with the PCF. Dr. Sudderth did not restore the deposit, therefore, he was not a qualified health care provider under the Act as of August 6, 1996. On September 17, 1996, the PCF sent notice to Perdue, through her counsel of record, that Dr. Sudderth was no longer a qualified health care provider.
Perdue filed a Petition for Damages with the 24th JDC on September 24, 1996 naming Dr. Sudderth and his medical clinic as defendants. Dr. Sudderth answered the petition and filed a third party demand naming the PCF as a third party defendant. The PCF filed a motion for summary judgment on March 18, 1997. Dr. Sudderth also filed a motion for suumary judgment on March 21, 1997. These motions were not heard at that time. Dr. Sudderth then filed for bankruptcy and on May 6, 1998 he was adjudicated bankrupt.
On November 21, 2001, Perdue filed a motion for partial summary judgment on the issue of qualification of Dr. Sudderth under the Act. A hearing on this and the other pending motions for summary judgment was held on January 25, 2002. The trial court issued a judgment on January 18, 2002 granting summary judgment in favor of the PCF. The trial court held that La. R.S. 40:1299.45(D) is silent as to the effect of disqualification of the self-insured provider on prior or pending claims. Since the statute is silent, the trial court held that the statute should be interpreted in favor of disqualification of Perdue's claim. Thereafter, Perdue filed this appeal. *1052 We disagree with the trial court and assess the following reasons.

DISCUSSION
This matter is before this Court as a review of a summary judgment. An appellate court reviews a summary judgment de novo and asks the same questions as the trial court, whether there are genuine issues of material fact and whether the mover is entitled to judgment as a matter of law. Lozier v. Security Transfer and Investment Corp., 96-2690 (La.App. 4 Cir. 4/30/97), 694 So.2d 497, citing Daniel v. Blaine Kern Artists, Inc., 96-1348 (La. App. 4 Cir. 9/1//96) 681 So.2d 19, writ denied, 96-2463 (La.12/6/96), 684 So.2d 934.
Perdue's claims against Dr. Sudderth were based upon alleged medical malpractice. In order for a patient to bring a claim pursuant to the Louisiana Medical Malpractice Act, the physician against whom the claim is being filed must be a qualified health care provider. A health care provider is a person licensed by the state to provide health care or professional services as a physician. LSA R.S. 40:1299.41(A)(1). To be qualified, the health care provider must either be insured by a commercial malpractice policy or be self-insured. If self-insured, the health care provider must file proof of financial responsibility in the form of a $125,000 deposit with the Patient Compensation Fund. LSA R.S. 40:1299.42(A)(1). The health care provider must also pay a surcharge as assessed by the PCF. LSA 40:1299.42(A)(2).
A patient may recover a maximum of $500,000 from a qualified provider for a claim made pursuant to the Act. LSA R.S. 40:1299.42(B)(2). The provider is liable for up to $100,000 plus interest and the PCF is responsible for the remainder up to the maximum amount. LSA R.S. 40:1299.42(B)(3)(a). In addition, a self-insured provider is only liable to a patient for malpractice under the Act while the security remains undiminished. LSA R.S. 40:1299.45(A)(1). If the amount placed in deposit is seized pursuant to a judgment, the self-insured provider has five days to replace the amount seized. LSA R.S. 1299.42(E)(1). Failure to timely replace the amount seized results in termination of enrollment with the PCF. Id.
When Perdue filed her claim with the PCF, approximately twelve other claims were pending against Dr. Sudderth. Unfortunately for Perdue, two other claimants received judgments shortly after Perdue's claim was filed. In order to satisfy those judgments, the PCF used the $125,000 deposit of Dr. Sudderth. He failed to timely replenish the deposit, therefore, his enrollment was terminated.
Thus, the issue before this Court is whether failure to replenish the deposit and the subsequent termination of enrollment apply retroactively to claims pending before the termination and filed during the time the provider was qualified. At the time this medical malpractice claim was filed with the PCF, the Act was silent as to what happens to those claims.
We find the failure to replenish the deposit should terminate enrollment of the provider, but only as to claims filed after the date of disqualification. The PCF should be responsible for those claims which were filed while the provider was qualified and covered by the Act. The PCF notified Perdue that Dr. Sudderth was a qualified health care provider and she relied upon this notification and proceeded with her claim pursuant to the requirements of the Act. Therefore, her rights under the Act should not be terminated, and the PCF should not be able to deny coverage, because the doctor subsequently *1053 became disqualified due to his own failure to replenish his deposit. Accordingly, we find that the PCF must provide coverage for the claim brought by Perdue.
In accordance with the above reasons, we reverse the trial court's granting of summary judgment in favor of the Louisiana Patient's Compensation Fund and remand to the trial court for further proceedings.
REVERSED AND REMANDED.