MICHAEL E. KIRBY, Judge.
All of these cases involve physicians who had placed a deposit of $125,000.00 with the Louisiana Patients’ Compensation Fund (“PCF”) as proof of financial responsibility. By doing so they were classified as “self-insured” under the Louisiana Medical Malpractice Act for the first $100,000.00 of potential liability to a claimant. In three of the cases,[1] all involving Dr. Henry Evans, upon receiving notice of the claim, the PCF had notified the claimants that the physician was qualified for the PCF coverage. However, during the pendency of those claims, the physician’s deposit was depleted to satisfy prior unrelated malpractice claims and he did not, after notice, replenish the deposit within the specified time. The PCF then notified the physician and the claimants that they no longer provided coverage for the physician.
In the fourth case,[2] the facts are slightly different. The physician, Dr. David Golden, was a self-insured member of the PCF at the time of the alleged malpractice but by the time the claim was made his deposit had been exhausted for Dan unrelated *237 claim. The PCF thus notified the claimant that the physician was not covered by the Fund.
The issue we must decide is whether, under these facts, the PCF provides coverage for these claims.
All of the plaintiffs’ claims were based upon alleged medical malpractice. In order for a patient to bring a claim pursuant to the Louisiana Medical Malpractice Act,[3] the physician against whom the claim is being filed must be a qualified health care provider. A health care provider is a person licensed by the state to provide health care or professional services as a physician. La. R.S. 40:1299.41(A)(1). To be qualified, the health care provider must either be insured by a commercial malpractice policy or be self-insured. If self-insured, the health care provider must file proof of financial responsibility in the form of a $125,000.00 deposit with the PCF. La. R.S. 40:1299.42(A)(1). The health care provider must also pay a surcharge as assessed by the PCF, regardless of whether he/she is self-insured or insured by a commercial malpractice policy. La. R.S. 40:1299.42(A)(2). A patient may recover a maximum of $500,000.00 from a qualified provider for a claim made pursuant to the Act. La. R.S. 40:1299.42(B)(2). The self-insured provider is liable for up to $100,000.00 plus interest and the PCF is responsible for the remainder up to the maximum amount. La. R.S. 40:1299.42(B)(3)(a). In addition, a self-insured provider is only liable to a patient for malpractice to the extent and in the manner specified in the Act while lathe security remains undiminished. La. R.S. 40:1299.45(A)(1). If the amount placed on deposit is seized pursuant to a judgment, the self-insured provider has five days to replace the amount seized. La. R.S. 40:1299.42(E)(1). Failure to timely replace the amount seized results in termination of enrollment with the PCF. Id.
Since La. R.S. 40:1299.42(E)(1) is silent as to whether claims pending at the time of such termination are covered, both plaintiff and the defending physician claim the excess coverage offered by the PCF applies. Conversely, the PCF argues that coverage was terminated immediately upon the physician’s failure to reinstate his deposit after the passage of five days according to La. R.S. 40:1299.42(E)(1). The PCF contends that strict construction must be applied to the Louisiana Medical Malpractice Act since it derogates from a tort victim’s rights. Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415, 420. This would allow a plaintiff to sue the unqualified physician in tort without a malpractice cap.
In Talbert v. Louisiana Ave. Medical Center, Inc., 2002-CA-1487; Paulette Scott, et al v. Dr. David Golden, et al., 2002-CA-1809; and Lillie Mae Celestin, et al. v. State of Louisiana, et al., 2003-CA-0187, the trial courts held that the respective medical doctors were covered by the PCF and one trial court noted that the PCF had certified to the plaintiff/patient that Dr. Evans was a qualified provider, thus, the patient should not have to bear the burden of retroactive cancellation.

STATEMENT OF THE LAW:

|4A preliminary problem exists in the first of this series of consolidated cases, Henry Evans, M.D. v. Louisiana Patients’ Compensation Fund, 2002-CA-0538.
Dr. Evans brought a declaratory judgment suit against the PCF asking that the court determine whether he was covered by the PCF for a claim filed against him by Saralyn Stevenson. On January 23, 2002, after the trial court had ruled in this *238 case, Ms. Stevenson dismissed her case against Dr. Evans.
 As noted by our brethren in the Louisiana Fifth Circuit in State in the Interest of C.W., 97-1229 (La.App. 5 Cir. 4/13/98), 712 So.2d 245:
It is a well settled principle of law that appellate courts will not render advisory opinions from which no practical results can follow. McChesney v. Penn, 29,776 (La.App. 2nd Cir.8/20/97), 698 So.2d 705; Aycock v. Union Parish School Board, 550 So.2d 814 (La.App. 2nd Cir.1989); Johnson v. Johnson, 599 So.2d 450 (La.App. 2nd Cir.1992). Absent a justiciable issue, that is, one brought by adverse parties with opposing claims ripe for judicial determination, any action by the court is improper. Perschall v. State, 96-0322 (La.7/1/97), 697 So.2d 240. The Louisiana Constitution implicitly prohibits courts from issuing advisory opinions which will not affect the parties’ rights. Midhoe v. Commission on Ethics for Public Employees, 646 So.2d 351, (La.1994); Church Point Wholesale Beverage v. Tarver, 614 So.2d 697 (La.1993).
Id. 3^4, 712 So.2d at 246.
Upon the dismissal of Ms. Stevenson’s case, this one appeal became one about which there exists no justiciable controversy. To proceed to judgment in that case would be tantamount to rendering an advisory opinion. Since we cannot render advisory opinions, we dismiss the appeal of Dr. Evans in 2002-CA-0538 as moot.
In the three cases remaining before us, Talbert v. Louisiana Ave. Medical Center, Inc., 2002-CA-1486, Paulette Scott, et al. v. Dr. David Golden, et al., 2002-CA-1809, and Lillie Mae Celestin, et al. v. State of Louisiana, et al., 2003-CA-0187, the issue is whether PCF coverage was terminated as to the plaintiffs who had claims pending against the physicians in the circumstances described above.
While these eases present a res nova issue in this circuit, two other circuits have considered it. With the same factual background Perdue v. Sudderth, 02-357 (La.App. 5 Cir. 10/29/02), 831 So.2d 1050, writ denied 2002-2821 (La.2/21/03), 837 So.2d 628, held:
We find the failure to replenish the deposit should terminate enrollment of the provider, but only as to claims filed after the date of disqualification. The PCF should be responsible for those claims which were filed while the provider was qualified and covered by the Act. The PCF notified Perdue that Dr. Sudderth was a qualified health care provider and she relied upon this notification and proceeded with her claim pursuant to the requirements of the Act. Therefore, her rights under the Act should not be terminated, and the PCF should not be able to deny coverage, because the doctor subsequently became disqualified due to his own failure to replenish his deposit. Accordingly, we find that the PCF must provide coverage for the claim brought by Perdue. Id. at 5, 831 So.2d at 1052-1053.
Likewise, in Taylor v. Clement, 02-561 (La.App. 3 Cir. 12/4/02), 832 So.2d 1089, writ denied 2003-0038 (La.3/28/03), 840 So.2d 571, in the same factual scenario, our brethren of the Third Circuit also held that the physician was a covered health care provider under the Act:
Dr. Clement was an enrolled Qualified] Hfealth] C[are] Provider] on the date of the occurrence of the medical practice, on the date the Taylors filed their claim against Dr. Clement, and on the date the judgment against Dr. | ^Clement was signed. The Act does not expressly state that a healthcare provider, qualified at the time of the medical negli *239 gence, qualified at the time of a complaint of medical negligence is filed, and qualified at the time judgment against the healthcare provider is signed, is somehow disqualified when it comes time to pay on the judgment because sometime after these events, the healthcare provider is terminated. Further, the July 3, 2001 letter sent by the PCF to counsel for the Taylors stated that Dr. Clement was “no longer a qualified provider.” We construe the phrase, “no longer” to mean after the date of the letter and henceforth.
Support for our interpretation of the PCF’s termination notice can be found in a recent fifth circuit case, Perdue v. Sudderth, 02-357 (La.App. 5 Cir. 10/29/02); 831 So.2d 1050, cited by the Taylors in their supplemental brief, where similar to the present case a physician allowed his self-insurance deposit with the PCF to lapse. In Perdue, the physician’s certificate of self-insurance deposit was still held by the PCF at the time the plaintiff filed her claim against Dr. Sudderth. However, Dr. Sudderth had other claims pending against him and one claimant obtained a judgment in her favor in the amount of $375,000.00 therefore, the certificate of deposit held by the PCF on behalf of Dr. Sudderth was used to satisfy that judgment. Dr. Sudderth, after receiving notice from the PCF to restore his deposit, failed to do so and his status as a QHCP was terminated as of August 6, 1996. Like Dr. Sudderth, Dr. Clement in the present case failed to restore his deposit after notification of its seizure by another claimant. The PCF asserted, as it does in the present case, that because Dr. Sudderth’s qualification was terminated, it was no longer responsible for payment on her claim. The fifth circuit noted, as have we, that the Act is silent as to what happens to pending claims, or for that matter, claims that have reached final judgment, when a self-insured doctor’s qualification is terminated. Ultimately, the fifth circuit concluded that “the failure to replenish the deposit should terminate enrollment of the provider, but only as to claims filed after the date of disqualification.” Id. at p. 5, 831 So.2d at 1052. Like the plaintiff in Perdue, the PCF notified the Taylors that Dr. Clement was a QHCP and they proceeded with their claim pursuant to the Act’s requirements. Therefore, as the fifth circuit found in Perdue, the Taylors’ “rights under the Act should not be terminated, and the PCF should not be able to deny coverage, because the doctor subsequently [and in the |7present case, after the Tay-lors’ claim was reduced to a judgment in their favor] became disqualified due to his own failure to replenish his deposit.” Id. Thus, we find that for purposes of the Taylors’ case, Dr. Clement is a QHCP and summary judgment in favor of the Taylors on this issue was.proper. Id. at 9-11; 832 So.2d at 1095-1096
In our view the PCF is, for all intents and purposes, an insurer covering claims for a qualified health care provider [“QHCP”] for sums over $100,000.00 up to the statutory maximum. Tucker v. Lain, 98-2273, p. 9 (La.App. 4 Cir. 9/5/01), 798 So.2d 1041, 1047. It is essentially in no different position than an insurer who issues a liability insurance policy with a specified deductible. If an insured goes bankrupt, the insurer is still liable up to policy limits; the insurer does not drop down to cover the deductible unless the contract of insurance so provides or a statute so mandates. See, Clark v. Ransom, 595 So.2d 710 (La.App. 5 Cir.1992); Tucker v. Lain, supra. As a de facto insurer that charges a QHCP a surcharge (i.e., premium), the PCF is in the position to set *240 an appropriate surcharge to cover the extra amounts necessary to protect itself from the injured party’s claim. La. R.S. 40:1299.44(A). The annual surcharge can be adjusted upwards or downwards in accordance with law and the experiences of the PCF. Id.
The thrust of our jurisprudence and statutory scheme clearly establishes that if a health care provider posts the required bond to be self-insured and pays the surcharge[4] required by the PCF, the health care provider becomes a QHCP having all of the benefits of La. R.S. 40:1299.41 et seq. (the “Act”). Once the bond is posted and the surcharge is paid, coverage occurs. Williams v. St. Paul Ins. Companies, 419 So.2d 1302 (La.App. 4th Cir.1982), citing La. R.S. 40:1299.42(A); Mehalik v. Morvant, 451 So.2d 1321 (La.App. 1st Cir.1984). Clearly, for there to be coverage, the surcharge must be paid before the alleged tort occurs.
In Abate v. Healthcare International, Inc., 560 So.2d 812 (La.1990), the Supreme Court held that where a wrongful act occurs before the health care provider obtains a “claims-made” medical malpractice commercial insurance policy and pays the surcharge, and the plaintiff then notifies the health care provider of his claim, the Act is not applicable to the claim. Implicitly, the Court held that if on the date of the occurrence of the alleged wrongful act the health care provider had in place either insurance or a bond (as a self-insured) and paid the surcharge, the Act protects the health care provider as a QHCP. Further, by implication, the Court analogized and equated an “occurrence” policy of commercial malpractice insurance to a health care provider who has elected to be self-insured, i.e., the self-insured bond is equivalent to an “occurrence” policy of insurance. See also, Clark v. Ransom, supra; Hedgepeth v. Guerin, 96-1044 (La.App. 1 Cir. 3/27/97), 691 So.2d 1355.
In pertinent part, La. R.S. 40:1299.45 provides:
A. (1) Only while malpractice liability insurance remains in force, or in the case of a self-insured health care provider, only while the security required by regulations of the board remains undiminished, are the health care provider and his insurer liable to a patient, or his representative, for malpractice to the extent and in the manner specified in this Part [23 of Chapter 5 of Title 40 of the Louisiana Revised Statutes.]
[[Image here]]
|9P. Every policy issued under this Part is deemed to include the following provisions, and any change which may be occasioned by legislation adopted by the legislature of the state of Louisiana as fully as if it were written therein:
[[Image here]]
(2) Any termination of this policy by cancellation is not effective as to patients claiming against the insured covered hereby, unless at least thirty days before the taking effect of the cancellation, a written notice giving the date upon which termination becomes effective has been received by the insured and the board at their offices. In no event shall said cancellation affect in any manner any claim which arose against the insurer or its insured during the life of the policy.
This language indicates that the legislature intended different rules to be *241 applicable to a self-insured QHCP and a QHCP who has purchased commercial medical malpractice insurance from an insurance company. Whereas a self-insured individual is liable at all times (at the time of both the occurrence and when the claim is made), only a commercial insurer can limit its coverage to the moment when the claim is made. We construe this language as indicating that the legislature intended to make claims against the PCF for a self-insured QHCP to be in the nature of an “occurrence” type policy rather than a “claims made” type policy. Additionally, the Louisiana Supreme Court has distinguished termination of a policy from cancellation of a policy.[5]
|inIf a health care professional elects to purchase a commercial malpractice insurance policy in order to qualify as a QHCP pursuant to the Act and that commercial insurer enters liquidation because of its insolvency, the injured party and the insured have a claim in the insurer’s liquidation for the first $100,000.00 of coverage plus judicial interest. That the injured party and the insured might be unable to recover from the liquidator sums due is of no moment, for the PCF is still liable for the excess, if any. Whether one or multiple claims against the commercial insurer exist is similarly of no moment; the injured parties and insured have multiple claims against the assets of the insurer in the insurer’s liquidation.
In like manner, whether a QHCP is self-insured is irrelevant. The injured party has a claim against the QHCP for the $100,000.00 and judicial interest. The PCF is still liable for the balance over $100,000.00 subject to the statutory maximum. The seizure of the bond is immaterial to coverage under the Act. That is, if the surcharge has been paid, as long as the self-insured’s bond was in existence and posted at the time of the wrongful conduct, coverage is afforded by the Act.
The PCF complaints about the asserted shortcomings of the Act for protection of the PCF are best directed to the legislature.

CONCLUSION:

For the above reasons the appeal in 2002-CA-0538, Evans v. Louisiana Patients Compensation Fund is dismissed as moot. The In judgments in 2002-CA-1486, Talbert, et al. v. Louisiana Avenue Medical Center, Inc, 2008-CA-0187, Celestin, et al. v. State of Louisiana, et al, and the judgment in 2002-CA-1809, Scott v. Dr. David Golden, et al. are affirmed. All are remanded for proceedings consistent with the views expressed herein.
AFFIRMED AND REMANDED.
JONES, J., Concurs in the Result.

. Paulette Scott, et al. v. Dr. David Golden, et al., 2003-CA-0187.

. La. R.S. 40:1299.41, et seq.

. The surcharge is an annual fee that the PCF receives from each person seeking coverage or continued coverage to administer the Act. La. R.S. 40:1299.44(A).

. In Anderson v. Ichinose, 98-2157 (La.9/8/99), 760 So.2d 302, the Court holds that expiration of a policy by its terms is a termination, not a cancellation; cancellation is the termination of coverage, with or without cause, by unilateral action of the insurer, whereas termination is the cessation of coverage by reason of the passage of the policy period or the occurrence of some event anticipated by the terms of the contract. In the case at bar, Dr. Golden did not terminate his self-insured bond; nor can one say that seizure of the self-insured's bond is an. anticipated event for one does not presume that a QHCP will commit a covered tort for which he or she will be held liable. Dr. Golden’s bond was cancelled by the action of a third party, i.e., his seizing creditor.