MAX N. TOBIAS, JR., Judge.
Bln this medical malpractice action, the plaintiffs, Jerry and Ella Bickham, appeal from a motion for summary judgment granted in favor of the defendant, the Estate of John D. Jackson, M.D. (“Dr. Jackson”), wherein the court determined: (1) Dr. Jackson was a qualified healthcare provider under the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, et seq. (the “Act”), at the time of the alleged malpractice, and (2) Dr. Jackson was entitled to summary judgment by virtue of a settlement entered into by the Bickhams and a co-defendant, Delta Radiology, L.L.C. (“Delta”). For the following reasons, we affirm.
On 30 November 1997, Jerry Bickham (“Mr. Bickham”) was injured in an automobile accident and taken by ambulance to the emergency room at Riverside Medical Center (“Riverside”) in Franklinton, Louisiana. While at Riverside, Mr. Bickham was evaluated and treated by Dr. Basem Yacoub. At his request, Mr. Bickham was transferred that same day to East Jefferson General Hospital (“EJGH”) for further treatment. The following day, 1 December 1997, Mr. Bickham was evaluated by defendant, Dr. Jackson.[1] While at EJGH, Mr. Bickham was diagnosed with a spinal cord compression injury rendering him a quadriplegic.
1 ¡^Following a medical review panel finding that none of the healthcare providers breached the applicable standard of care, the Bickhams filed two suits against various medical providers involved in his treatment. The first suit was filed in the Twenty-Second Judicial District Court for the Parish of Washington against Riverside and certain members on staff at that facility. The instant suit was filed in the Civil District Court for the Parish of Orleans naming as defendants: Louisiana Medical Mutual Insurance Company (“LAMMICO”); Delta; Dr. Richard Tu-pler and Dr. Josh Patel (both radiologist employed by Delta); Dr. Rene deBois-blanc, a general surgeon; nurse Mize; and Dr. Jackson, a neurosurgeon working at EJGH. The Bickhams subsequently entered into a settlement agreement with Delta and its insurer, LAMMICO, for $100,000.00, and released Delta and its employees, Drs. Tupler and Patel. The Bick-hams also settled with the Louisiana Patient’s Compensation Fund (“PCF”), for $700,000.00, plus future medicals as defined by Louisiana Statute and regulated by the Louisiana Patient’s Compensation Fund. The Bickhams, however, reserved all rights against all other defendants, including the right to “pre-judgment interest from in solido obligors.”
On 24 September 2010, Dr. Jackson again filed a motion for summary judgment on the basis that he was a qualified healthcare provider eligible for participation in the PCF on the date he treated Mr. Bickham[2] and that the plaintiffs have *470 recovered the maximum amount under the damages cap provided by the Act, in accordance with this court’s previous ruling in Bickham v. Inphynet, 07-0356, |3unpublished (La.App. 4 Cir. 7/13/07), unit denied, 07-1863 (La.11/16/07), 967 So.2d 524, wherein we held that “[Mr.] Bickham had exhausted the statutory limit of general damages and, therefore, cannot proceed against another health care provider” and that Bickham’s “remedy under the statute is to make a claim with the PCF for future medical expenses as they are incurred.”[3] Following a hearing on the motion, the trial judge, without assigning reasons, signed a judgment on 29 December 2010, granting Dr. Jackson’s motion for summary judgment and dismissing the Bick-hams’ claims against Dr. Jackson and the Estate of John D. Jackson, M.D., with prejudice. The Bickhams now appeal from this judgment.[4]
DISCUSSION
Appellate courts review summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. La. C.C.P. art. 966; Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, p. 5 (La.2/20/04), 866 So.2d 228, 232; Harris v. Sternberg, 01-1827, p. 4 (La.App. 4 Cir. 5/22/02), 819 So.2d 1134, 1137.
The Bickhams’ appeal raises two issues for review: (1) whether the trial court erred in determining that the summary judgment evidence presented on behalf of Dr. Jackson established that he satisfied the requirements of a qualified healthcare provider pursuant to La. R.S. 40:1299.41, et seq., and (2) whether the |4trial court erred in dismissing the claim for interest and costs on the grounds that the Bick-hams have already received the maximum recovery under the Act. Finding no error in the trial court’s determination of these issues, we affirm the judgment below in its entirety.

Dr. Jackson’s Status as a Qualified Healthcare Provider

In the instant case, the Bickhams attack the qualification of Dr. Jackson as a qualified healthcare provider entitled to the benefits and protections afforded by the Act. The purpose of the Act is to limit the liability of healthcare providers who qualify by maintaining specified malpractice insurance and by paying a surcharge to the PCF. A qualified healthcare provider is liable for malpractice only to the extent provided in the Act; namely, a qualified healthcare provider has no liability for any amount in excess of $100,000.00, plus interest. La. R.S. 40:1299.41 B(2); La. R.S. 40:1299.45 A; Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992). A defendant healthcare provider bears the burden of proving that he comes within the *471 protections afforded by the Act. Remet v. Martin, 97-0895, p. 4 (La.App. 4 Cir. 12/10/97), 705 So.2d 1132, 1134.
To obtain the benefit of the limitation of liability, a healthcare provider must become qualified by fulfilling the requirements of La. R.S. 40:1299.42 A[5] as follows:
To be qualified under the provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided in Subsection E of this Section.
1 s(2) Pay the surcharge assessed by this Part on all health care providers according to La. R.S. 40:1299.44.
(3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
The requirement of proof of financial responsibility is further explained in La. R.S. 40:1299.42 E(l), which states, in pertinent part:
Financial responsibility of a health care provider under this Section may be established only by filing with the board proof that the health care provider is insured by a policy of malpractice insurance in the amount of at least one hundred thousand dollars per claim with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider, or in the event the health care provider is self-insured, proof of financial responsibility by depositing with the board one hundred twenty-five thousand dollars in money or represented by irrevocable letters of credit, federally insured certificates of deposit, bonds, securities, cash values of insurance, or any other security approved by the board.
These same requirements are reiterated in the Louisiana Administrative Code at La. Admin. Code 37:III.501, et seq., which governs the qualifications, conditions, and procedures required for PCF enrollment. The basic qualifications for enrollment are set forth in La. Admin. Code 37:III.503, which requires that a healthcare provider as defined by the Act (a) demonstrate and maintain financial responsibility, (b) make an application for enrollment, and (c) pay the applicable surcharges. Of particular relevance is La. Admin. Code 37:III.515, which provides as follows:
A. Upon receipt and approval of a completed application (including evidence of financial responsibility pursuant to § 505, § 507 or § 509) Rand payment of the applicable surcharge by or on behalf of the applicant health care provider, the executive director shall issue and deliver to the health care provider a certificate of enrollment with the fund, identifying the qualified health care provider and specifying the effective date and term of such enrollment and the scope of the fund’s coverage for that health care provider.
B. Duplicate or additional certificates of enrollment shall be made available by the executive director to and upon the request of an enrolled health care provider or his or its attorney, or professional liability insurance underwriter when such certification is required to evidence enrollment with the fund in connection *472 with an actual or proposed malpractice claim against the health care provider.
These provisions demonstrate that a healthcare provider becomes enrolled in the PCF, and thus qualified, upon approval of an application, demonstration of financial responsibility to the satisfaction of the PCF, and payment of the applicable surcharge to the PCF.[6] Upon satisfaction of these three basic requirements, a certifí-cate of enrollment is issued, and this certificate establishes the healthcare provider to be a qualified healthcare provider under the Act.
La. R.S. 40:1299.47 makes reference to the “certifícate of enrollment” issued by the PCF as follows:
A. (l)(a)(i) No action against a health care provider covered by this Part, or his insurer may be commenced in any court before the claimant’s proposed complaint has been presented to a medical review panel established pursuant to this Section.
17(ii) A certificate of enrollment issued by the board shall be admitted into evidence.
This is the only reference to the “certificate of enrollment” contained in the Act. Per this statutory authority providing for the “certificate of enrollment” as evidence, the jurisprudence holds the certificate is competent evidence to establish a prima, facie case for the applicability of the medical malpractice law regarding claims against the party identified on the certificate. La. R.S. 13:3711, 3712; Goins v. Texas State Optical, Inc., 463 So.2d 743, 745 (La.App. 4th Cir.1985).
Additionally, a separate surcharge is not required to be paid to the PCF on behalf of a qualified healthcare provider for each malpractice insurance policy covering the provider. The Act does not mandate a healthcare provider pay multiple surcharges in order to achieve qualified status. Moreover, qualification is a status granted to healthcare providers, not insurance companies. Only the healthcare provider can take steps to qualify under the Act and avail himself of the Act’s benefits. St. Paul Fire and Marine Ins. Co. v. Eusea, 99-2117, pp. 7-8 (La.App. 1 Cir. 9/22/00), 775 So.2d 32, 37.
Our review of the record, in the instant case evidences that Dr. Jackson presented a prima facie case establishing that he satisfied all of the necessary requirements for participation in the PCF for the year 1997, including the time he treated Mr. Bickham as a self-insured physician who was being paid as an employee of Columbia Jefferson Medical Center (“Columbia Jefferson”). Once Dr. Jackson fulfilled the requirements of becoming qualified under the Act, he was deemed as entitled to receive every benefit of the Act. To show that he was qualified, Dr. Jackson submitted Proof of Financial Responsibility, a Physician Application and Request for Quotation, and evidence of a premium payment for |sthe year 1997 that was made on his behalf for the period during which he treated Mr. Bickham.
Specifically, the sworn statements of Lorraine LeBlanc, executive director of the PCF, demonstrate that proof of financial responsibility and an enrollment form were submitted for Dr. Jackson and the applicable surcharges were paid on his be *473 half. In her affidavit submitted in support of Dr. Jackson’s motion for summary judgment, Ms. LeBlanc attests to the authenticity of the Proof of Financial Responsibility tendered to the PCF on Dr. Jackson’s behalf, and to the authenticity of the check issued by Columbia/HCA Healthcare Corporation to the PCF on or about 11 December 1996, for premium payments for the enrollment of Columbia Jefferson and Dr. Jackson in the PCF for the 1997 calendar year. The Bickhams argue that Dr. Jackson is unqualified for participation in the PCF because the proof of financial responsibility and surcharge submitted on his behalf were submitted by Columbia Jefferson. We find no caselaw, statutory authority, or language contained within La. Admin Code 37:111.501, et seq., which prevents an employer from submitting the required proof of financial responsibility on behalf of an employee to qualify that employee, independently and individually, for participation in the PCF.
Ms. LeBlanc further attests that “Dr. Jackson was and is a qualified healthcare provider properly enrolled in the Louisiana Patient’s Compensation Fund with respect to any alleged act of malpractice which may have occurred during the calendar years of 1997 and 1998.” Based upon her review of the PCF’s records concerning Dr. Jackson, she concluded that he was and is “entitled to all privileges, immunities, limitations, and/or protections provided to qualified | ^healthcare providers by the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, et seq., for the calendar years of 1997 and 1998.”
Once Dr. Jackson presented a prim,a facie ease of his status as a qualified healthcare provider entitled to the protections and benefits afforded by the Act at the time of the alleged malpractice, the burden shifted to the Bickhams to come forward with competent evidence rebutting that status and creating a genuine issue of material fact so as to defeat Dr. Jackson’s motion for summary judgment. We find that the Bickhams have failed to do so.
In an effort to create a genuine issue of material fact, the Bickhams argue that Ms. LeBlanc’s deposition testimony conflicts with her subsequent affidavit regarding the status of Dr. Jackson as a qualified healthcare provider. Contrary to the Bickhams’ assertions, we find no conflict exists in the deposition testimony given by Ms. LeBlanc and her later executed affidavit that creates a genuine issue of fact which would warrant reversal of the trial court’s judgment. In her deposition, Ms. LeBlanc was asked to produce documentation substantiating that Dr. Jackson filed the requisite physician self-insurance application and that he provided the appropriate proof of financial responsibility to the PCF in support of his application to be enrolled in the PCF as a self-insured provider. At the time of her deposition, Ms. LeBlanc was unable to locate the requested documentation. Thereafter, however, according to her affidavit, a copy of the Physician Application and Request for Quotation for physicians with underlying self-insurance, which was submitted on behalf of Dr. Jackson in support of his application for PCF qualification, was found. Ms. LeBlanc attested that the reason she was unable to locate the proof of financial responsibility during her deposition was because the premium tendered on behalf of Dr. Jackson had been tendered by | inColumbia/HCA Healthcare Corporation and was not maintained in the PCF’s files under Dr. Jackson’s name. Ms. LeBlanc stated the requisite paperwork filed on Dr. Jackson’s behalf unequivocally demonstrated to her that Dr. Jackson was, in fact, enrolled in the PCF and was a qualified healthcare provider with the PCF for any alleged acts of medical malpractice *474 which may have occurred during the 1997 calendar year.
The Bickhams also argue that Dr. Jackson’s qualification for participation in the PCF was limited solely to the treatment he rendered while acting within the course and scope of his employment with Columbia Jefferson. The Bickhams contend that because Mr. Bickham was treated by Dr. Jackson at EJGH, the treatment rendered was not within Dr. Jackson’s employment with Columbia Jefferson, and thus, Dr. Jackson was not qualified for participation in the PCF with respect to his treatment of Mr. Bickham. We have found no jurisprudence or statutory authority, and the Bickhams cite none, suggesting that an employee of a facility that is qualified for participation in the PCF is only qualified under the Act when providing healthcare services and/or treatment within the course and scope of his or her employment at that specific facility.
Dr. Jackson’s employment contract expressly refutes the Bickhams’ position. Specifically, Section 19(i) of Dr. Jackson’s employment contract provides that “Employee shall have the right to admit and treat patients at hospitals other than that of the Employer.” This contract was authenticated, and Dr. Jackson’s employment with Columbia Jefferson verified, through the affidavit of Robert Lagesse, the Physician Operations Vice President for the Delta Division of HCA, Inc. Additionally, Ms. LeBlanc’s affidavit states that proof of financial responsibility submitted by an employer on behalf of a physician employee is | n permissible and does not affect the extent or scope of that physician’s enrollment in the PCF or status as a qualified healthcare provider in the PCF. Accordingly, we hold that Dr. Jackson, having established through proper documentation that proof of financial responsibility, surcharge, and application were submitted on his behalf, was qualified for participation in the PCF regardless of whether he was providing medical care at the facility with which he had an employment relationship or at any other facility, such as EJGH, where he might have privileges to render medical treatment.
In conclusion, we find the Bickhams have produced no competent evidence establishing that there existed any limitation on the scope of the proof of financial responsibility or premiums paid to the PCF on Dr. Jackson’s behalf. Moreover, the Bickhams have failed to submit evidence refuting the certified documentation and sworn statements submitted by Dr. Jackson establishing that at the time he treated Mr. Bickham, he was a qualified healthcare provider eligible for participation in the PCF. Accordingly, we find the trial judge properly granted the motion for summary judgment on the issue.

Recovery of Interest and Cost

In their second assignment of error, the Bickhams assert that, despite settlement with Delta, LAMMICO, and the PCF, the recovery of $800,000.00 does not preclude proceeding against other non-settling healthcare provider defendants found to be comparatively at fault for uncapped damages, specifically, interest and costs, up to their individual $100,000.00 limitation on liability.[7] According to the 11?Bickhams, while the Act requires that future medical *475 expenses and related benefits are to be paid by the PCF, no provision in the Act or in the Louisiana jurisprudence exists which would relieve the co-defendant qualified healthcare providers from the obligation of paying their proportionate share of interest on $100,000.00, plus costs, based on their percentage of comparative fault following a settlement with a co-provider.[8]
In essence, the Bickhams ask this court to determine res nova whether a plaintiff can pursue a claim against a non-settling qualified healthcare provider, who has not been voluntarily dismissed from the suit, for interest (on an amount based upon his/her/its percentage of fault not to exceed his/her/its individual limitation of liability of $100,000.00), and costs where the plaintiff, having reserved his rights against the non-settling defendants for pre-judgment interest, has previously received in settlement with one health care provider and the PCF the entire $500,000.00 statutory cap allowed for medical malpractice damages under the Act. We hold that a plaintiff cannot.
At the time of the alleged malpractice at issue, La. R.S. 40:1299.42 B provided, in pertinent part:
(1) The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.
(2) A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1,1991, | ,ofor all malpractice claims because of injuries to or death of any one patient.
(3)(a) Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all liable health care providers, as provided in Paragraph (2) of this Subsection, shall be paid from the patient’s compensation fund pursuant to the provisions of R.S. 40:1299.44(C).
(b) The total amounts paid in accordance with Paragraphs (2) and (3) of this Subsection shall not exceed the limitation as provided in Paragraph (1) of this Subsection.
Under the Act, an injured party has the option of pursuing his/her claim for malpractice against either (1) one or more solidarily liable qualified health care providers up to $100,000.00 each, plus judicial interest, subject to the statutory maximum of $500,000.00, or (2) against one qualified health care provider for $100,000.00, plus judicial interest, and the balance over $100,000.00, from the PCF subject to the statutory maximum.
In the instant case, the Bickhams opted to settle their claim against one of the qualified health care providers, Delta, for $100,000.00 and with the PCF for the remaining balance. While the Bickhams were entitled under the Act to seek judicial interest from Delta on the $100,000.00 they received in settlement from Delta, it appears the Bickhams waived this right in settlement.[9] In doing so, the Bickhams were operating under the mistaken belief that by specifically reserving their rights *476 against the non-settling healthcare providers to pursue pre-judgment interest, they could recover interest on the $100,000.00 received from Delta in settlement from the non-settling health care providers in proportion to each 114provider’s respective percentage of liability, not to exceed his/her individual $100,000.00 cap. We hold that when a plaintiff in a medical malpractice action opts to settle his/her claim with one qualified healthcare provider for $100,000.00 and to proceed against the PCF for the balance up to the statutory cap, judicial interest on the $100,000.00 tendered in settlement by the healthcare provider is the responsibility of the settling healthcare provider and judicial interest on the $400,000.00 tendered in settlement by the PCF is the responsibility of the PCF. As to the payment of costs, we hold that under the statute in effect at the time of Mr. Bickham’s injury, this is the responsibility of the PCF.
CONCLUSION
For the forgoing reasons, we affirm the trial court’s judgment.

AFFIRMED.

LOVE, J., concurs in part and dissents in part with reasons.
LOVE, J., concurs in part and dissents in part with reasons.
hi concur in the majority’s affirmation of the trial court’s determination that Dr. Jackson established that he satisfied the requirements of a qualified healthcare provider under the Louisiana Medical Malpractice Act (“the Act”). However, I respectfully dissent from the dismissal of the Bickhams’ claim for interest and costs on the grounds that they have already received the maximum recovery under the Act.
In accordance with the Louisiana Supreme Court’s interpretation of Miller v. LAMMICO, 07-1352 (La.1/16/08), 973 So.2d 693, and comparative fault provisions, qualified health care providers are responsible for their share of apportioned fault, up to the statutory limit provided by La. R.S. 40:1299.42(B)(2). In Miller, the Court opined that “[pjroviders already receive the benefits intended by the legislature, the primary benefit being that the amount of their liability is limited to $100,000 pursuant to La. R.S. 40:1299.42(B)(2).” Id. Providing the possibility of an additional benefit does not conform with the purposes of either the Medical Malpractice Act or the comparative fault scheme.
I therefore find that not allowing a plaintiff to recover interest and costs from a non-settling, qualified health care provider would provide the “additional benefit” that the Supreme Court interprets that the statute seeks to avoid. Also, this [ 2Court has ruled that “nothing in the malpractice act ... states that once the victim settles with one health care provider, the victim is precluded from seeking a determination of liability against remaining health care providers.” Remet v. Martin, 98-2751 (La. App. 4th Cir.3/31/99), 737 So.2d 124, 132. Therefore, I would allow the plaintiffs to recover interest and costs from a non-settling, qualified health care provider such as Dr. Jackson.
ON APPLICATION FOR REHEARING
The appellant’s application for rehearing is denied. The Patient’s Compensation Fund confessed that Dr. Jackson was a covered health care provider. Under our jurisprudence that ends the inquiry.
REHEARING DENIED.

. In January 2010, following the death of Dr. Jackson, the Administrator/Executor of the Succession of Dr. John Jackson was substituted as a defendant.

. Dr. Jackson previously filed the same motion for summary judgment in 2006 seeking dismissal on the grounds that he was a qualified healthcare provider through his employment with the self-insured hospital, Columbia Jefferson Medical Center, an affiliate of Columbia/HCA Healthcare Corporation (now known as HCA, Inc.), at the time of the alleged malpractice. Dr. Jackson's motion was denied at that time on the basis that Dr. Jackson failed to establish the filing of a self-insurance application or that the requisite $125,000.00 surcharge had been paid demon *470 strating that he was a qualified healthcare provider at the time he treated Mr. Bickham.

. In Bickham v. Louisiana Emergency Med. Consultants, Inc., 10-0535 (La.App. 1 Cir. 11/1/10), 52 So.3d 162, the First Circuit reached the same conclusion in the Bick-hams' first suit brought in Washington Parish, holding "[b]ased on the record before the court, we conclude that Mr. Bickham suffered a single, indivisible injury from which all plaintiffs’ damages flow. Because the plaintiffs have recovered the statutory maximum permitted under La. R.S. 40:1299.42(B)(1) for Mr. Bickham’s injury, plaintiffs cannot recover any additional amount from Lifeline for the damages Mr. Bickham may have suffered as a result of Lifelines [sic] medical treatment and care of him.” Bickham, p. 9, 52 So.3d at 167.

. The judgment from which the Bickhams appeal was designated by the trial court as a final judgment for purposes of appeal and included an express determination that there was no just reason for delaying any appeal.

. For all statutory references in this opinion, we refer to the versions applicable at the time the alleged malpractice occurred on 30 November 1997.

. If a healthcare provider posts the required bond to be self-insured and pays the surcharge required by the PCF, the healthcare provider becomes a qualified healthcare provider having all of the benefits of the Act. Evans v. Louisiana Patient's Compensation Fund, 02-0538, pp. 7-8 (La.App. 4 Cir. 2/25/04), 869 So.2d 234, 240. Once the bond is posted and the surcharge is paid, coverage occurs. Id.

. The Bickhams settled with Delta and LAM-MICO for $100,000.00. They also settled with the PCF for $700,000.00; however, no breakdown or designation of the amounts paid is provided in order to definitively determine whether interests and costs were included and/or considered. Given that the PCF paid $300,000.00 over and above its statutory cap of $400,000.00, arguably this additional $300,000.00 paid included payment of interest and costs on the $400,000.00.

. The record indicates that judicial interest, which accrued from 1 May 1998, the date of judicial demand, until 15 August 2006, the date of settlement, and costs exceeded the $100,000.00 limit of liability paid by the settling healthcare provider, Delta.

. A copy of the settlement agreement reached between the Bickhams and Delta, LAMMICO, and the PCF is not contained in the record on appeal.